766 So.2d 595 (2000)
Harold Davey ROGERS and Susan Whipple Rogers, Plaintiffs-Appellees,
v.
HORSESHOE ENTERTAINMENT, et al., Defendants-Appellants.
No. 32,800-CA.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2000.
Rehearing Denied September 21, 2000.
*598 Piper & Associates by Robert E. Piper, Jr., Shreveport, Poynter, Mannear & Colomb by W. Steven Mannear, Baton Rouge, Counsel for Defendants-Appellants.
Long Law Firm by Michael A. Patterson, Baton Rouge, Degravelles, Palmintier & Holthaus by John W. Degravelles, Hayes, Harkey, Smith & Cascioby by Joseph D. Cascio, Jr., Monroe, Counsel for Plaintiffs-Appellees.
Before NORRIS, C.J., and KOSTELKA and DREW, JJ.
NORRIS, Chief Judge.
Plaintiffs, Harold and Susan Rogers, brought suit to enforce a "Most Favored Nations" ("MFN") clause of an option contract (No. 32,800-CA). The Rogers also brought a second, subsequent legal malpractice suit against the law firm they had retained to draft the option contract and its insurer (No. 32,801-CA). After the suits were consolidated by the district court, summary judgments were granted on behalf of the Rogers in the contract suit and in favor of the law firm in the malpractice suit. Because the issues are factually interrelated, we have recounted the facts common to both cases in the instant opinion. For the reasons expressed below, we amend and enter a partial summary judgment in No. 32,800-CA. A separate judgment is also rendered this day affirming No. 32,801-CA.

Factual and Procedural Background
In early 1993, the Rogers were approached by Thomas Kenny, who held himself out as an agent of several individual relatives as well as a series of trusts created on behalf of the children of certain relatives and business associates of Jack Binion ("the Binion Group") and/or Horseshoe Entertainment, Inc., which was seeking a riverboat gaming license and casino hotel site in Bossier City at the time. Kenny sought an option on a tract of land the Rogers owned for the anticipated casino project. The Rogers retained Weems, Wright, Schimpf, Hayter & Carmouche, a local law firm, to assist them in negotiations and to draft the option contract. Inserted in the option contract, which was signed on February 26, 1993, was a MFN clause. This clause provided that if the Binion Group or its nominee exercised its option to purchase the property from the Rogers, and if, within one year of closing, the Binion Group or its nominee purchased another tract of real estate within one-quarter mile of the Rogers' tract at a higher price, then the Rogers would be entitled to the difference. Also on that day, Kenny and Horseshoe executed a "Nominee Title Holder Agreement" wherein the Binion Group acquired Kenny's rights and assumed any future obligations arising from the option agreement, which was attached in full to the Title Holder Agreement as an exhibit. On June 23, 1993, Kenny verbally advised the Rogers that the option would be exercised, and the sale was closed on June 25, 1993, with the Rogers receiving $300,000 for their property.
On December 16, 1993, the Binion Group entered into a transaction with Red River Motor Company to acquire a tract of real estate within one-quarter mile of the tract the Rogers sold them. As consideration, *599 Red River received $274,810.00 cash, title to another parcel of real estate, and improvements to other property. Formal title to all property acquired by the Binion Group in both the Rogers and Red River transactions was subsequently transferred to Horseshoe Entertainment, Inc.
On January 6, 1995, the Rogers filed suit against the Binion group as well as Horseshoe Entertainment, Inc. (collectively hereinafter "Horseshoe"), claiming that Red River received more per square foot for its property than Horseshoe paid them for their property, thereby triggering the MFN clause and entitling them to the difference. Twenty days later, on January 26, the Rogers filed a separate suit against the Weems firm, alleging legal malpractice in drafting the option contract.
Initially, the Horseshoe suit was before Judge Charles R. Scott. The Rogers filed for Summary Judgment in July, 1997, and Judge Scott denied the motion, stating that two issues of material fact remained unresolved: the valuation of the Red River property, and whether the Red River transaction was indeed an "act of exchange" rather than a "purchase" within the contemplation of the MFN clause. Subsequently, on September 24, 1998, the Horseshoe suit and the Weems malpractice suit were consolidated and assigned to Judge Roy L. Brun.
On October 5, 1998, after the Weems defendants filed a motion for summary judgment in the malpractice case, the Rogers filed a motion to re-urge their motion for summary judgment in the Horseshoe case, which Judge Brun subsequently granted in a written opinion after a hearing. The court also granted summary judgment to the Weems defendants in the same opinion. Horseshoe appeals the grant of summary judgment against it and the other named defendants; the Rogers appeal the grant of summary judgment in favor of the law firm, admittedly only if the Horseshoe judgment is reversed.

Applicable Law
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The party seeking summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Barnett v. Staats, 25,357 (La.App.2d Cir.1/19/94), 631 So.2d 84.
Recent amendments to art. 966 were intended to bring Louisiana summary judgment procedure more closely into line with the Federal standard and abrogate judicial antipathy toward the motion. Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41. These enacted changes have leveled the playing field for the litigants; documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. Koeppen v. Raz, 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337; Gardner v. LSU-MC, 29,946 (La. App.2d Cir.10/29/97), 702 So.2d 53. In fact, summary judgment procedure is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966 A(2).
The current summary judgment standard as articulated in Hayes, supra, was expressly adopted by the legislature; in fact, any prior jurisprudence inconsistent with Hayes has been legislatively overruled. See, Acts of 1997, No. 483, § 4. Under this new standard, although the initial burden of proof still remains with the mover to show that no genuine issue of *600 material fact exists, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that genuine material issues of fact remain. La. C.C. art. 966 C(2); Hayes, supra at 694-695. Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the non-moving party may not rest on the mere allegations or denials of its pleadings, but must respond by producing evidence of a material factual dispute as to a claim, action, or defense. Id.; Eason v. Finch, 32,157 (La.App.2d Cir. 8/18/99), 738 So.2d 1205 writ denied, 99-2767 (La.12/10/99), 751 So.2d 861. This comports with well-established federal jurisprudence analyzing the analogous Federal Rule of Civil Procedure 56(c), as summarized by the United States Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which requires a non-moving party to produce some evidence other than unsupported denials in the pleadings or argument of counsel in order to defeat a motion for summary judgment which is supported with evidence. Louisiana Health Services & Indem. Co. v. Brown Builders, Inc., 32,575 (La.App.2d Cir.12/8/99), 747 So.2d 708 ("opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence that material facts are still at issue"); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ..."); Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir.1998) ("It is now axiomatic that a `non moving party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.'").
Appellate review of summary judgments is de novo, utilizing the same criteria that guide the trial court. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290.
In addition, Louisiana law allows a partial summary judgment when it is dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case. La.C.C. art. 966 E; Jefferson v. Chevron USA, Inc., 97-2436 (La.App.4th Cir. 5/20/98), 713 So.2d 785, 789, writ denied, 98-1681 (La.10/16/98), 727 So.2d 441; Tippen v. Baker, 31,195 (La.App.2d Cir. 9/23/98), 718 So.2d 617, writ denied, 98-2666 (La.12/11/98), 730 So.2d 464.

Discussion-Subsequent Summary Judgments
On appeal, Horseshoe contends, as a threshold matter, that the trial court erred when it granted summary judgment to the Rogers because a substantially similar motion was previously denied before the cases were consolidated. As such, Horseshoe argues, this denial constitutes the "law of the case," and the Rogers' second motion for summary judgment should have been denied. Notwithstanding that the doctrine of the "law of the case" is merely a discretionary rule, over a year had passed between the two motions. During this time, additional discovery was conducted by the parties, some of which specifically addressed the areas of concern raised by Judge Scott when he denied the original motion.
Typically, following the "law of the case" doctrine, reargument of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Ward v. Hermitage Ins. Co., *601 28,236 (La.App.2d Cir.4/3/96), 671 So.2d 1229, writ denied, 96-1141 (La.9/3/96), 678 So.2d 554; Richard v. Wal-Mart Stores, Inc., 29,926 (La.App.2d Cir.10/31/97), 702 So.2d 79, writ denied, 97-3002 (La.2/6/98), 709 So.2d 744. In the present case, based on the additional discovery, the additional arguments and authorities raised in the Weems motion, as well as the potential for manifest injustice by virtue of incongruent results created by the Weems motion, we conclude that the trial court's decision to permit the Rogers to refile their motion for summary judgment was based on more than doubt; as such, the law of the case doctrine is inapplicable. Id. Moreover, we find no authority supporting Horseshoe's argument that a trial judge cannot entertain a motion for summary judgment a second time. See, Melton v. Miley, 98-1437 (La.App. 1st Cir.9/24/99), 754 So.2d 1088, writ denied, 99-3089 (La.1/7/00), 752 So.2d 867; Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ denied, 575 So.2d 371 (La.1991).
As such, we find that Judge Brun was entirely within his discretion to consider the re-urged motion, particularly since the Weems defendants had also filed a summary judgment in the malpractice portion of the consolidated case which raised similar arguments. Just as it would be manifestly unjust to deny the Weems defendants an opportunity to have their motion heard on the basis of the court's prior ruling, it would be unjust to have two potentially conflicting outcomes.

Execution and Enforceability of The Option Contract
Horseshoe next argues that the Act of Sale executed on June 25, 1993 was not an exercise of the previous option contract, but rather the result of an entirely new offer and acceptance which failed to include the MFN clause. In support of this argument, Horseshoe urges that the option contract contained a requirement that the Rogers be notified in writing, by registered mail, if Kenny or his nominee desired to exercise the option. Horseshoe contends that because Kenny did not provide this notice to the Rogers, the option terminated and the Act of Sale must have been the product of a new offer and acceptance independent of the original option granted by the Rogers.
We find this argument to be without merit. Even without the written notice, Horseshoe purchased the property within the time frame and in the manner specified by the option contract. On this summary judgment evidence, it is not disputed that the Rogers received actual notice of the purchaser's intent to exercise the option and that the sale was consummated in accordance with the material terms of the option. A plain reading of the option contract shows that written notice was an obligation of the purchaser, Horseshoe, for the benefit of the sellers, the Rogers. It is illogical for the purchaser to avoid the effects of the option contract because of its own failure to provide a written notice. In view of the oral notice, and the subsequent execution of a sale that otherwise complied with the material terms of the option, this is a clear case of acceptance by performance. La. C.C. art.1939.
Horseshoe further argues that all contracts affecting the rights to immovable property, including the exercise of an option to purchase, must be in writing. La. C.C. art. 2440. However, the writing requirement may be waived in certain circumstances based on the individual facts of the case. See Pittman v. Pomeroy, 552 So.2d 983 (La.App. 2d Cir.1989); Steptore v. Masco Const. Co., 93-2064 (La.8/18/94), 643 So.2d 1213, 1216. Waiver occurs when there is a knowledge of the existence of the right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. Steptore v. Masco, supra. Horseshoe urges that a finding of waiver is fact-specific, requiring an inquiry into the parties' intent, thereby removing it from the purview of summary judgment.
*602 The uncontroverted summary judgment evidence, however, clearly supports a waiver. In the first place, Kenny verbally and timely informed the Rogers that the option would be exercised. Horseshoe clearly was on notice as to the existence of the MFN clause, as it was incorporated into the Nominee Title Holder Agreement which it executed with Kenny on the same day that the option agreement between Kenny and the Rogers was signed. Kenny's conduct was consistent with an intent to exercise the option. Moreover, Jack Binion, the true interested party behind the Horseshoe purchases, stated in deposition that he believed the Rogers transaction to be an exercise of the option contract. See Binion dep. 7/19/96, p. 31. For their part, the Rogers treated Kenny's oral notice as sufficient and executed the sale of the property. To the extent that the oral acceptance modified the option's notice requirement, the Rogers accepted this modification by appearing and closing the sale at the designated time and place. Sealy (Pines Road) Partnership v. Physicians & Surgeons Hosp., Inc., 480 So.2d 832 (La.App. 2d Cir.), writ denied, 483 So.2d 1024 (La.1986). Also notable is that the sale applied the cash paid to the Rogers as consideration for the option towards the ultimate purchase price. This evidence, taken together, shows that both sides knowingly waived the written notice requirement and that Horseshoe is now estopped from contesting it. Pittman v. Pomeroy, supra. We are, of course, sensitive to the argument that issues of intent are rarely suitable for summary judgment disposition. See, e.g., Smith v. Our Lady of the Lake Hosp. Inc., 639 So.2d 730 (La.1994). However, the Rogers, as movers for summary judgment, have made a prima facie showing of waiver. The burden shifted to Horseshoe to produce factual support that the purchaser did not effectively exercise the option. La. C.C.P. art. 966 C(1), (2). Instead of summary judgment evidence material to these issues, Horseshoe has presented only argument that is insufficient to show the existence of any genuine issue of material fact. As such, Horseshoe's attempt to invoke this requirement in order to evade a specific term of an agreement which it otherwise performed, is implausible at best.
Finally, Horseshoe argues that even if the Act of Sale can be construed as an exercise of the option, the MFN clause is unenforceable because it was not incorporated into the Act of Sale and deed for the property. Horseshoe notes that the Act of Sale, which was recorded pursuant to La. C.C. arts. 2439 and 2440, recites that the entire consideration for the sale was $300,000, and nowhere mentions the prospect of additional consideration by virtue of the MFN clause or any other means. Horseshoe concedes, however, that if the MFN clause had been incorporated into the Act of Sale, it would be enforceable. Lessard v. Lessard Acres Inc., 349 So.2d 293 (La.1977).
We disagree. The MFN clause, by its plain terms, obligated Kenny or his nominee to pay the Rogers a determinable amount of money if a certain event occurred. This is a personal obligation subject to a suspensive condition-whether a future sale would be perfected within the contemplation of the MFN clause. La. C.C. arts. 1766, 1767. As such, this obligation was a term of the personal contract between the parties, independent of the property or its ownership. It is therefore distinguishable from a "real" right of ownership, such as a servitude, which must be included in the deed to put "the world" as well as subsequent purchasers on notice as to this obligation. La. C.C. arts. 646, 722, 775, 776.
As noted by Professor Yiannopoulos:
A personal right may be defined as the legal power that a person (obligee) has to demand from another person (obligor) a performance consisting of giving, doing, or not doing a thing. The Louisiana Supreme Court has declared that "a personal right ... defines man's relationship *603 to man and refers merely to an obligation one owes to another which may be declared only against the obligor."
* * *
The Supreme Court has declared that "the term `real right' under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world." The use of the term proprietary interests may be confusing. The Supreme Court apparently intended to define real rights as dismemberments of ownership.
A.N. Yiannopoulos, 2 La. Civil Law TreatiseProperty, § 201(3d Ed.1991), p. 367; see also, Harwood Oil & Mining Company v. Black, 240 La. 641, 124 So.2d 764, 767 (1960). Accordingly, the "nature" of a personal right is an obligation, whereas the "nature" of a real right is one of ownership and its dismemberments. Thus, the ultimate "object" of the MFN clause and the right it created is not vested in immovable property, but in an entirely separate obligation itself; as such, La.C.C. art. 2439 and 2440, which govern the sale of immovable property, do not apply to the obligation created by the MFN clause. See also, Grezaffi v. Smith, 572 So.2d 183 (La. App. 1st Cir.1990)(holding that an action to compel the purchaser to pay the sum due under an agreement to purchase immovable property was not a claim for immovable property, and, therefore, La.C.C.P. art 80 did not govern venue).
Notably, Horseshoe has presented no summary judgment evidence to refute the legal conclusion that this MFN clause is by its nature a personal obligation, and not a "real right" of ownership or one of its dismemberments. See Grezaffi v. Smith, supra. As such, the Rogers have shown as a matter of law that the MFN clause remains a valid and enforceable obligation.
These arguments lack merit.

Purchase vs. Exchange
Having determined that the MFN clause of the option agreement is applicable and enforceable, we now turn to whether the Red River transaction properly triggered the clause. Horseshoe contends that the transaction is an exchange, and as such, is not a purchase as contemplated by the MFN clause. Although labeled an "Act of Exchange" by Horseshoe, the Binion Group paid Red River $274,810.00 cash in addition to conveying to Red River other real estate and performing repairs on other property owned by Red River. Alternatively, Horseshoe argues that summary judgment is inappropriate, as the meaning of the term "purchase" in the MFN clause, as intended by the parties, escapes precise definition and necessitates an inquiry into the parties' intent which falls outside the scope of a motion for summary judgment.
Since a contract establishes the law between the parties, the purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art.2045. Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741; Billingsley v. Bach Energy Corp., 588 So.2d 786, 790 (La.App. 2d Cir.1991). When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. Brown v. Drillers, Inc., supra. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent. La. C.C. art.2046; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 197; Billingsley, supra.
Although words of a contract must be given their generally prevailing meaning, words of art or technical terms must be *604 given their technical meaning when the contract involves a technical matter. La. C.C. art.2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art.2048.
Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless there is ambiguity in the written expression of the parties' common intent. A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation. Noel v. Discus Oil Corp., 30,561 (La.App. 2 Cir. 5/13/98), 714 So.2d 105.
In the present case, based on the summary judgment evidence presented, we conclude as a matter of law that the Red River transaction, despite its label, was not an exchange, for in addition to a parcel of real estate, Horseshoe conveyed a substantial amount of cash to Red River. La.C.C. art. 2660 clearly defines an exchange as "a contract, by which the parties to the contract give to one another, one thing for another, whatever it be, except money; for in that case it would be a sale." The First Circuit, in confronting an analogous transaction also involving the transfer of both property and cash, likewise concluded that such a transaction did not fall within the Code's definition of exchange, although it similarly was labeled an "Act of Exchange of Immovable Property." Clary v. D'Agostino, 95-0447 (La.App. 1st Cir.12/15/95), 665 So.2d 792. In contrast, the code defines a sale as "a contract whereby a person transfers ownership of a thing to another for a price in money." La.C.C. art. 2439.
Moreover, we are not persuaded by Horseshoe's argument that summary judgment is inappropriate because the term "purchase" as contemplated by the MFN escapes precise definition, and therefore an inquiry as to the parties' intention is warranted. Even if we were so inclined, Horseshoe has made no showing that the parties intended the term to carry a meaning other than that delineated in the Civil Code and normal usage, despite the copious discovery taken in this case. A word susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art.2048. Quite obviously, the option contract's concern was the acquisition of real property; as such the MFN clause and the use of that term, however artfully labeled, reasonably contemplated a subsequent acquisition of property by Horseshoe for any consideration. In fact, one of the attorneys who drafted the MFN clause testified that the word "purchase was intended to be any kind of acquisition." Gilsol dep., p. 8. Furthermore, we also note that other jurisdictions have broadly interpreted MFN clauses to include subsequent acquisitions of property as "purchases," since the primary intent of such clauses is to provide protection to the seller. See, e.g., Eastern Petroleum Co. v. Kerr-McGee Corp., 447 F.2d 569 (7th Cir.1971). As such, this argument has no merit.

Valuation: The Doiron Affidavit
By its final assignment of error, Horseshoe argues that the District Court erred when it determined the price paid in the Red River transaction by using an affidavit submitted by a professional real estate appraiser retained by the Rogers. While price determination is ordinarily a factual issue, despite the lengthy pendency of the suit, no countervailing evidence was submitted by Horseshoe to controvert the evidence presented by the Rogers. Since an opposing party cannot rest on the mere allegations or denials of its pleadings, but must present evidence that material facts are still at issue, summary judgment is appropriate in this case as long as the affidavit is admissible and carries the Rogers' burden of production. Louisiana Health Services & Indem. Co. v. Brown *605 Builders, Inc., supra; Eason v. Finch, supra.
Ordinarily, admission of evidence is subject to the trial court's discretion. State v. Catanese, 368 So.2d 975, 983 (La.1979). The former jurisprudence of this court and our sister circuits, admittedly, has at times held expert affidavits inadmissible as hearsay at the summary judgment stage of a case. Relying on the uncertain state of the law on this issue in Louisiana, Horseshoe contends that no such controverting evidence was necessary because the affidavit offered by the Rogers from John C. Doiron, a professional real estate appraiser, is an inadmissible affidavit offering solely the opinion of an expert witness and not the personal knowledge required for an affidavit. Recently, however, the Louisiana Supreme Court has addressed this issue and has held that expert opinion evidence at the summary judgment stage should not be automatically excluded but rather the trial judge should consider the standards set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in deciding whether expert opinion testimony is admissible at the summary judgment stage. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2257 (La.2/29/00), 755 So.2d 226, 234. Thus, the admissibility of the Doiron appraisal is subject to the same standards and rules that govern the admissibility of evidence at trial.
In Daubert, which was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116, 1123 (La.1993), the United States Supreme Court instructed trial courts to function as gatekeepers, to ensure that only reliable and relevant expert testimony is presented to the jury. Daubert, supra, at 590-93, 113 S.Ct. 2786. Although Daubert addressed traditional "scientific" evidence, courts should apply the same rule to experts relying on technical or other specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1174-75, 143 L.Ed.2d 238 (1999). Under Daubert, the threshold test is not whether the expert evidence is based on personal knowledge, but "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Independent Fire, supra, at 234 quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786. This entails "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id., quoting Daubert, 509 U.S. at 592-93, 113 S.Ct. 2786. Essentially, in fulfilling this gatekeeping role, the trial court must ensure that the proffered evidence is not only relevant, but reliable, following a flexible approach considering factors such as whether the technique can be (and has been) tested, whether it has been subjected to peer review and publication, whether there is a known or potential rate of error, and whether the relevant scientific/expert community generally accepts the technique. Daubert, supra, 509 U.S. at 593-94, 113 S.Ct. 2786; Kumho, supra, 119 S.Ct. at 1175. Each of these factors may or may not be relevant to the particular inquiry. Id.
In Independent Fire Ins. Co. v. Sunbeam Corp., supra, the Louisiana Supreme Court enunciated several important underlying guidelines for district courts to consider when applying the Daubert standards to whether expert opinion evidence should be considered at the summary judgment stage. Initially, the trial judge cannot make credibility determinations on a motion for summary judgment. Secondly, the court must not attempt to evaluate the persuasiveness of competing scientific studies, but rather the court must "focus solely on the principles and methodology, not on the conclusions they generate." Thirdly, the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion." Finally, and most importantly, *606 summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial. Independent Fire, supra at 236.
In the instant case, we have thoroughly reviewed the Doiron affidavit and conclude that the district court erred in finding that it was admissible. Doiron is an MAI certified appraiser who is the owner of Appraisal Services, one of this state's largest valuation businesses. He claimed to have conducted an appraisal in conformity with the Uniform Standards of Professional Appraisal Practice, which outline the standards used by professionals in his field in conducting such appraisals. A copy of these standards, as well as Doiron's C.V. outlining over 20 years of relevant experience, were included as attachments to the report. In reaching his conclusions, Doiron relied on the public Conveyance records of Bossier Parish, documents relating to the transaction, and a personal tour of the property involved. Nevertheless, we are unconvinced that Doiron's affidavit sufficiently complied with those standards as he failed to outline the specific appraisal methodology utilized so that it could be subjected to peer review or duplication so as to ensure against error. Daubert, supra, 509 U.S. at 593-94, 113 S.Ct. 2786; Kumho, supra, 119 S.Ct. at 1175. In addition, Doiron's report does not comply with Uniform Standards of Professional Appraisal Practice Rule 4-4 in that there is no delineation of the market area, no analysis of supply and demand conditions affecting the market area, and no forecast of the effect of anticipated development. In fact, facially, Doiron's affidavit purportedly establishing the value of the Red River transaction appears to have required no specific expertise or specialized skills other than the use of a calculator. As such, the appraisal represents a "subjective belief or unsupported speculation" which is inadmissible under Daubert-Foret. Daubert, supra, 509 U.S. at 589, 113 S.Ct. at 2795. These deficiencies leave a genuine issue of material fact, specifically, the amount paid by Horseshoe for the Red River transaction. Accordingly, summary judgment is inappropriate with respect to the amount, if any, owed the Rogers pursuant to the MFN clause. The case will be remanded for further proceedings on this issue only for a determination of the value of the Red River transaction and any money due the Rogers.

Conclusion
For the reasons expressed herein, we amend the district court's judgment in No. 32,800-CA to enter a partial summary judgment declaring that the Rogers are entitled to enforce the MFN clause of the option contract as to the Red River transaction against the Horseshoe defendants. We remand this case solely for the determination of the resultant damages, if any. We affirm all other aspects of the district court's judgment. Costs of this appeal are assessed equally to the Rogers and to the Horseshoe defendants.
AMENDED TO ENTER PARTIAL SUMMARY JUDGMENT; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

APPLICATION FOR REHEARING
Before NORRIS, C.J., GASKINS, PEATROSS, KOSTELKA and DREW, JJ.
Rehearing denied.