37 So.3d 1145 (2010)
William Lane STEPHENSON, III, Sally B. Stephenson, Karon Stephenson Miller, Corrie Marie McGovern Trust, Lisa Lallier Trust, Michael Bradley McGovern Trust, William Lane Stephenson, IV Trust, Plaintiffs-Appellees
v.
PETROHAWK PROPERTIES, L.P., Defendant-Appellant.
No. 45,296-CA.
Court of Appeal of Louisiana, Second Circuit.
June 2, 2010.
*1146 Jones, Walker, Waechter, Poitevent, Carrère & Denègre by Michael B. Donald, Baton Rouge, LA, for Appellant.
Wiener, Weiss & Madison by John M. Madison, Jr., M. Allyn Stroud, Shreveport, LA, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
The defendant/lessee, Petrohawk Properties, L.P. ("Petrohawk"), appeals a summary judgment ordering it to pay an additional lease bonus totaling $1,920,000 plus interest to the plaintiffs / lessors, William Lane Stephenson, III, and Sally B. Stephenson, who appears individually and as trustee for the Corrie Marie McGovern Trust and the Michael Bradley McGovern Trust; Karon Stephenson Miller; and Michael Y. McGovern as trustee for the Lisa Lallier Trust and the William Lane Stephenson, IV Trust (referred to herein collectively as the "Stephensons"). Finding that there is no genuine issue of fact for trial and that summary judgment is appropriate as a matter of law, we affirm.

FACTS
Petrohawk entered six identical oil and gas leases with the Stephensons (hereafter the "Stephenson leases"), effective April 15, 2008. The Stephenson leases cover 160 acres in DeSoto Parish described as follows:
SECTIONS 10 & 11: TOWNSHIP 14 NORTHRANGE 13 WEST

SECTION 10: The North-half of the Northeast Quarter (N/2 of NE/4); and the Southeast Quarter of the Northeast Quarter (SE/4 of NE/4), containing 120.0 acres, more or less.

SECTION 11: The Northwest Quarter of the Northwest Quarter (NW/4 of NW/ 4), containing 40.0 acres, more or less.
Petrohawk paid the Stephensons a lease bonus of $4,250 per acre, for a total payment of $680,000. Each of the Stephenson leases contained a "most favored nations" clause (hereafter the "MFNC") which states:
Lessee agrees that, if at any time during the first twelve (12) months of this lease, Lessee acquires directly (or indirectly through Lessee's agents, Affiliates, parent or Subsidiaries), a lease ("Third Party Lease") affecting land(s) or mineral rights located, in whole or in part, within two miles of the perimeter of any boundary line of any of the land(s) covered by this lease (the "Geographic Area"), and in consideration of said Third Party Lease, Lessee pays a lease or signing bonus greater than $4,250.00 per acre, then Lessee shall immediately pay to Lessor an amount equal to the difference between the more favorable bonus in the Third Party Lease and $4,250.00 per acre. Notwithstanding the foregoing, the following leases shall not be considered a Third Party Lease for purposes of this provision: (a) a lease obtained from any state, city, parish, or federal governmental entity or from any school board or levee board or district; and (b) a lease covering a tract of land of less than 20 acres; provided, however, *1147 that a lease that is one (1) of two (2) or more leases obtained from a single lessor or owner which leases cover tracts of 20 acres or more in the aggregate located in whole or in part within the Geographic Areas, which leases cover tracts of 20 acres or more in the aggregate located in whole or in part within the Geographic Area, shall be a Third Party Lease for purposes of this provision.
When Petrohawk subsequently acquired another lease within the Geographic Area described by the MFNC, Petrohawk paid the Stephensons an additional bonus of $2,250 per acre, bringing their total lease bonus to $6,500 per acre or $1,040,000.
On July 9, 2008, Petrohawk entered an oil and gas lease with George Archer Frierson II, John Bolinger Frierson, Clarence Nicholson Frierson, Jr., Christian Basinger Frierson, Betty Basinger Frierson, and the Frierson L.L.C., (hereafter the "Frierson lease"), covering various noncontiguous tracts of land totaling over 4,000 acres in Caddo, Bossier, and DeSoto Parishes. Petrohawk paid the Friersons a lease bonus of $18,500 per acre. The Frierson lease included a small tract of 7.36 acres in DeSoto Parish described as follows:
Township 14 North, Range 13 West
Section 13: Beginning at the NE Corner of the SE/4 of SW/4 of Section 13-14N-13W, thence run W 6.67 chains, thence S 11.04 Chains, Thence E 6.67 chains, thence N 11.04 chains to the P.O.B. Containing 7.36 acres.
Part of the 7.36 acre tract falls within the Geographic Area described in the MFNC of the Stephenson leases.
By letter of January 28, 2009, the Stephensons sought to enforce the MFNC by demanding an additional lease bonus payment from Petrohawk in the amount of $1,920,000 ($12,000 × 160 acres).[1] The additional $12,000 per acre demanded by the Stephensons represented the difference between the $6,500 per acre they had thus far been paid by Petrohawk and the $18,500 per acre paid by Petrohawk to the Friersons. Petrohawk refused to pay the additional lease bonus demanded by the Stephensons.
On March 3, 2009, the Stephensons filed a petition against Petrohawk for breach of contract due to its refusal to pay the additional lease bonus. In answer to the petition, Petrohawk asserted that the Frierson lease did not trigger the MFNC in the Stephenson leases. Petrohawk reasoned that the MFNC specifically exempts "a lease covering a tract of land of less than 20 acres" and that the 7.36 acre tract in the Frierson lease is less than 20 acres.
On April 15, 2009, the Stephensons filed a motion for summary judgment. They asserted that the language of the MFNC is unambiguous and that the exclusion for "a lease covering a tract of land of less than 20 acres" clearly refers to a lease that covers a single tract of less than 20 acres and does not refer to a lease like the Frierson lease that covers multiple tracts of over 4,000 acres. In addition to offering the leases in support of the motion, the Stephensons included an affidavit by Enoch J. French, an engineer and land surveyor. French provided a map of the Holly Quadrangle, which is the location of both the Stephenson lease tract and the 7.36 acre tract in the Frierson lease. The map shows "the closest points of the two tracts to be 9990 feet (1.89 miles) apart."
In opposing the Stephensons' motion for summary judgment, Petrohawk argued that the MFNC is susceptible to more *1148 than one interpretation and therefore ambiguous. However, in a cross motion for summary judgment, Petrohawk asserted that the language of the MFNC is clear and unambiguous in excluding "a lease covering a tract of land of less than 20 acres." Because the Frierson lease covers a tract of land of less than 20 acres that falls in whole or part within the Geographic Area described in the Stephenson leases, Petrohawk argued that it did not trigger the MFNC. In support of its motion, Petrohawk offered the affidavit of its district land manager, John W. Walsh. The affidavit notes that the Frierson lease encompasses several tracts of land including the 7.36 acre tract; that the Friersons own only a 1/14 undivided interest in the 7.36 acre tract, which is part of a 640-acre preexisting unit operated by another entity; and that Petrohawk obtained a less than one percent non-participating interest in the 7.36-acre tract. The affidavit relates that the 7.36 acre tract "has essentially no economic value to Petrohawk and is a de minimus [sic] tract in function as well as size" and that Petrohawk did not intend the MFNC to be triggered by a lease with only de minimis acreage located in the Geographic Area.
Because both parties asserted that no ambiguity exists in the MFNC, neither presented evidence revealing the negotiations for the provision or the party responsible for its drafting.
On August 27, 2009, the trial court rendered summary judgment in favor of the Stephensons and against Petrohawk in the amount of $1,920,000, plus interest from date of judicial demand. The trial court found the Frierson lease to be a Third Party Lease as defined in the MFNC. Petrohawk's motion for summary judgment was denied. Its appeal is now before us for review.

DISCUSSION

Applicable Law
The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. Total Minatome Corp. v. Union Texas Products Corp., 33,433 (La.App.2d Cir.8/23/00), 766 So.2d 685.
The grant or denial of motion for summary judgment is subject to a de novo review on appeal. Town of Haynesville, Inc. v. Entergy Corp., 36,519 (La.App.2d Cir.1/31/03), 840 So.2d 597, writ denied, XXXX-XXXX (La.6/6/03), 845 So.2d 1090; Green v. State Farm General Ins. Co., 35,775 (La.App.2d Cir.4/23/02), 835 So.2d 2. The reviewing court applies the same criteria as the trial court when determining whether summary judgment is appropriate. Total Minatome, supra. Summary judgment should be granted when the pleadings, answers to interrogatories, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Caddo Gas Gathering L.L.C. v. Regency Intrastate Gas LLC, 44,851 (La.App.2d Cir. 11/12/09), 26 So.3d 233.
A material fact is one that potentially insures or precludes recovery, affects a party's ultimate success, or determines the outcome of the dispute. Hines v. Garrett, XXXX-XXXX (La.6/25/04), 876 So.2d 764, rehearing den., XXXX-XXXX (La.9/24/04), 882 So.2d 1134, citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. A genuine issue is one about which reasonable persons could disagree. Id. If only one conclusion could be reached by reasonable persons, then there is no triable issue and summary judgment is proper. Id.
*1149 A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals in consideration of the payment of a rental or bonus. La. R.S. 31:114; Odom v. Union Producing Co., 243 La. 48, 141 So.2d 649 (La.1961). Like contracts in general, a mineral lease is the law between the parties and regulates their respective rights and obligations. Winnon v. Davis, 32,988 (La.App.2d Cir.5/15/00), 759 So.2d 321. The general rules of contract interpretation apply when interpreting contracts involving mineral rights. Blanchard v. Pan-OK Production Co. Inc., 32,764 (La. App.2d Cir.4/5/00), 755 So.2d 376, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1043.
The purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art. 2045; Rogers v. Horseshoe Entertainment, 32,800 (La. App.2d Cir.8/1/00), 766 So.2d 595, writs denied, 2000-2894 (La.12/8/00), 776 So.2d 463 and 2000-2905 (La.12/8/00), 776 So.2d 464. The words used in a contract are to be given their generally prevailing meaning unless they are words of art or have acquired a technical meaning. La. C.C. art. 2047. When the words of a contract are clear, explicit, and lead to no absurd consequences, then no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the words of a contract are susceptible of different meanings, they must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision that is susceptible of different meanings must be interpreted so that it is rendered effective. La. C.C. art. 2049. Moreover, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Finally, if doubt arises from lack of a necessary explanation that one party should have given, the contract must be interpreted in a manner favorable to the other party. La. C.C. art. 2057.
The determination of whether a contract is clear or ambiguous is a matter of law. Town of Haynesville, Inc. v. Entergy Corp., 42,019 (La.App.2d Cir.5/2/07), 956 So.2d 192, writ denied, XXXX-XXXX (La.9/21/07), 964 So.2d 334. Ambiguity exists as to the parties' intent when the contract lacks a provision on the issue or when the language of the contract is uncertain or fairly susceptible to more than one interpretation. Rogers v. Horseshoe Entertainment, supra; Blanchard v. Pan-OK Production Co. Inc., supra; Noel v. Discus Oil Corp., 30,561 (La.App.2d Cir.5/13/98), 714 So.2d 105.

Analysis
At issue is whether the MFNC requires Petrohawk to pay the Stephensons an additional lease bonus due to the fact that part of a 7.36-acre tract included in the Frierson lease falls within the Geographic Area defined in the Stephenson leases. The Stephensons maintain that the language of the MFNC is unambiguous and that the Frierson lease is a Third Party Lease affecting land or mineral rights within the Geographic Area. Therefore, Petrohawk is obligated to pay them an amount equal to the difference between the amount they have been paid and the more favorable bonus in the Frierson lease.
Petrohawk likewise maintains that the MFNC is unambiguous. However, it argues that because the 7.36-acre tract in the Frierson lease is "a tract of land of less than 20 acres" that falls within the Geographic Area, the Frierson Lease is not a Third Party Lease and does not trigger the MFNC obligation. Alternatively, *1150 Petrohawk asserts that because its interpretation of the MFNC is as reasonable as the Stephensons' interpretation, the MFNC is ambiguous, and summary judgment is not appropriate.
If the parties' meaning and intent as expressed in the MFNC can be found within the four corners of their agreement without resort to extrinsic evidence, then interpretation is a matter of law and may be resolved on summary judgment. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. We will begin our review by closely examining the language and structure of the MFNC.
The MFNC first sets forth the following general rule:
Lessee agrees that, if at any time during the first twelve (12) months of this lease, Lessee acquires directly (or indirectly through Lessee's agents, Affiliates, parent or Subsidiaries), a lease ("Third Party Lease") affecting land(s) or mineral rights located, in whole or in part, within two miles of the perimeter of any boundary line of any of the land(s) covered by this lease (the "Geographic Area"), and in consideration of said Third Party Lease, Lessee pays a lease or signing bonus greater than $4,250.00 per acre, then Lessee shall immediately pay to Lessor an amount equal to the difference between the more favorable bonus in the Third Party Lease and $4,250.00 per acre.
This general rule, which is effective for leases acquired during the first 12 months of the Stephenson leases, obligates Petrohawk to pay the Stephensons the difference between their bonus payment and a more favorable bonus paid under a Third Party Lease affecting land or mineral rights within the defined Geographic Area. Significantly, neither party disputes the meaning of the MFNC's general rule, which provides a "most favored nations" benefit to the Stephensons. Petrohawk concedes that if read alone, the general rule would require it to pay the higher lease bonus demanded by the Stephensons. The Frierson lease is clearly a lease affecting land or mineral rights located within two miles of the perimeter of any boundary line of the lands covered by the Stephenson leases.
To understand the operation of the MFNC, the important features of the general rule must be considered. The general rule is operative for 12 months. A lease that triggers the MFNC benefit must have a signing bonus is excess of $4,250 per acre, the amount paid to the Stephensons, and its acreage must be located in whole or in part within the Geographic Area. This means that the acreage of the Third Party Lease may extend outside the Geographic Area so long as at least "part" of it lies within the Geographic Area. There is no quantity requirement regarding the amount of acreage that must be within the Geographic Area. Thus, if only one acre or less of the more than 4,000 acres covered by the Frierson lease is in the Geographic Area, the general rule set forth in the first sentence of the MFNC triggers the additional bonus payment.
Also notable is that the general rule does not utilize the phrase a "tract of land" or require contiguity of all the lands in a Third Party Lease for purposes of triggering the MFNC benefit. The general rule is in line with La. R.S. 31:114, which provides that a "single mineral lease may be created on two or more noncontiguous tracts of land." Thus, a single mineral lease of multiple noncontiguous tracts of land or mineral rights thereto, such as the Frierson lease, located in whole or in part within the Geographic Area would trigger the MFNC benefit in favor of the Stephensons.
*1151 For these reasons, when the Frierson lease is considered under the first sentence of the MFNC, the lease unquestionably triggers the benefit of a higher bonus payment for the Stephensons. The Frierson lease "lands" extend in "part" into the Geographic Area, and the bonus greatly exceeded that paid to the Stephensons. The fact that only one small 7.36-acre tract, which is noncontiguous and not in close proximity to the remaining Frierson lease acreage, is located in part within the Geographic Area does not render the general rule inoperative. The clear intended benefit of the MFNC's general rule is that any size lease affecting lands or minerals that extends into the Geographic Area and for which Petrohawk paid a bonus greater than that paid to the Stephensons will trigger the MFNC and entitle the Stephensons to an additional bonus payment.
After the general rule, the MFNC sets forth a limitation on the general rule. The limitation states that the following shall not be considered a Third Party Lease:
(a) a lease obtained from any state, city, parish, or federal governmental entity or from any school board or levee board or district; and
(b) a lease covering a tract of land of less than 20 acres.
While the general rule of the MFNC is for the benefit of the Stephensons, the limitation on what is considered a Third Party Lease is clearly for the benefit of Petrohawk. The first limitation on the general rule is that a lease obtained from a governmental entity, including a school board or levee district, shall not be considered a Third Party Lease. Presumably, governmental entities would be in a position to demand higher bonus payments for public lands than private landowners would be able to demand. Also, the exclusion of leases from governmental entities indicates the intent to treat the Stephensons on par with other similar private landowners who lease to Petrohawk.
The second limitation and the one relevant to this dispute states that "a lease covering a tract of land of less than 20 acres" shall not be considered a Third Party Lease. The phrase "a lease covering a tract of land of less than 20 acres" appears clear and explicit. The words "a lease" refers to a single lease. The term "tract" has no precise meaning, but generally refers to a lot, piece, or parcel of land that has a contiguous quantity of acreage. See Black's Law Dictionary, 6th Ed. (1991). Thus, the limitation can be readily understood as applicable to one lease that covers a piece or parcel of land of less than 20 acres. Considering the generally prevailing meaning of the words in the context of the MFNC, the phrase refers to a lease of less than 20 acres of land.
The general rule of the MFNC has no acreage quantity requirement for a Third Party Lease. By excluding from the definition of Third Party Lease "a lease covering a tract of land of less than 20 acres," the second sentence of the MFNC sets a quantity requirement for the total lease acreage of a Third Party Lease, namely, only a lease of 20 acres or more that is located in whole or in part in the Geographic Area can trigger the MFNC. This benefits Petrohawk. As bonus payments become more competitive, Petrohawk would be at liberty to easily lease small tracts, meaning tracts of less than 20 acres, from landowners in and around the Geographic Area of the Stephenson Leases without the concern of triggering the MFNC with each new lease and without the added survey work and cost that would be required to determine whether any acreage of such leases is located in whole or in part within the Geographic Area.
*1152 Petrohawk ignores the plain meaning of the phrase "a lease covering a tract of land of less than 20 acres" by arguing that the MFNC does not apply to a tract of land of less than 20 acres that is located in whole or in part within the Geographic Area, regardless of the total acreage covered by the lease. Because La. R.S. 31:114 provides that a single mineral lease may be created on two or more noncontiguous tracts, the phrase "tract of land" could refer to one tract of land in a lease covering multiple noncontiguous tracts. This appears to support Petrohawk's interpretation of the 20-acre limitation. However, attributing such meaning to the phrase "tract of land" as used in the 20-acre limitation clause, would lead to absurd consequences in view of the MFNC's intended purpose as expressed in its general rule.
The MFNC's intended purpose is to provide the Stephensons a bonus equivalent to similarly situated leases. However, the MFNC's general rule would be largely meaningless and it's intended purpose would not be served if the 20-acre limitation is given the most extreme meaning suggested by Petrohawk's interpretation. For example, a lease by another landowner of two noncontiguous tracts of 19 and 141 acres, respectively, located in the Geographic Area, would be considered under this extreme interpretation "a lease covering a tract of land of less than 20 acres" and would not trigger the MFNC benefit as a Third Party Lease. It would be an absurd result to say that the Stephensons are not entitled to an equivalent lease bonus because such 160-acre lease covers a tract of land of less than 20 acres. Regardless of whether either tract or both are located in whole or in part within the Geographic Area, the Stephensons should receive an equivalent bonus for their 160-acre lease.
Petrohawk's strained interpretation largely reads out the allowance that the lease lands need only in part be located in the Geographic Area and severely limits application of the MFNC's general rule and its intended benefit for the Stephensons. Even though a single lease may include two or more noncontiguous tracts, Petrohawk's interpretation would treat a single lease that covers multiple noncontiguous tracts as separate leases of each tract for the purpose of determining whether any individual tract triggers the MFNC. No part of the MFNC requires this. The parties could have specified in the MFNC that where only one tract in a lease of multiple noncontiguous tracts is located in whole or in part within the Geographic Area and that one tract covers less than 20 acres, then the lease is not a Third Party Lease regardless of the total leased acreage. This would have clearly excluded the Frierson Lease. Instead, the MFNC excludes from consideration as a Third Party Lease "a lease covering a tract of land of less than 20 acres." This language is neither uncertain nor fairly susceptible to more than one reasonable interpretation in light of the MFNC considered as whole. It excludes a lease of less than 20 total acres from being considered a Third Party Lease under the MFNC. A lease of noncontiguous tracts totaling 20 acres or more with at least one tract located in part within the Geographic Area is a Third Party Lease. Like the Frierson lease, it is a lease affecting land or mineral rights located in part in the Geographic Area. The Frierson lease, which is a single lease covering multiple noncontiguous tracts of over 4,000 acres, is not for purposes of the MFNC a lease covering a tract of less than 20 acres.
By focusing only on the tract of land with acreage located in whole or in part within the Geographic Area, Petrohawk wholly ignores the totality of the Frierson *1153 lease acreage and the apparent purpose of the MFNC as shown by its clear and explicit language. The error in Petrohawk's interpretation is further revealed by the last provision included in the MFNC. Though Petrohawk asserts that the last provision of the MFNC has no bearing on the meaning of the limitation, we disagree. After excluding "a lease covering a tract of land of less than 20 acres," the MFNC includes the following caveat:
[P]rovided, however, that a lease that is one (1) of two (2) or more leases obtained from a single lessor or owner which leases cover tracts of 20 acres or more in the aggregate located in whole or in part within the Geographic Areas, which leases cover tracts of 20 acres or more in the aggregate located in whole or in part within the Geographic Area[2], shall be a Third Party Lease for purposes of this provision.
This last provision clarifies that "a lease covering a tract of land of less than 20 acres" establishes a minimal acreage quantity for a Third Party Lease. A small lease, meaning a lease with total lands of less than 20 acres, would not alone trigger the MFNC benefit. However, this exception allows a small lease affecting land or mineral rights located in whole or in part in the Geographic Area to be considered a Third Party Lease if the same owner or lessor leased other acreage to Petrohawk and the leased acreage under the multiple leases of the small tracts totals in the aggregate 20 acres or more. This multiple lease exception is for the benefit of the Stephensons. It prevents Petrohawk from avoiding its obligation under the MFNC by entering multiple small leases from the same owner or lessor so as to disqualify those leases as Third Party Leases and avoid triggering the MFNC.
Under Petrohawk's interpretation, the single Frierson lease would not trigger the MFNC benefit. However, if the Friersons and Petrohawk had entered separate leases covering tracts of 20 acres or more in the aggregate, including a lease of the 7.36-acre tract, then the MFNC would be triggered. This would undoubtedly be an absurd result under the MFNC. There is no reasonable rationale for a result that would treat differently a single lease of multiple tracts covering over 20 acres located in whole or in part in the Geographic Area from multiple leases that cover tracts of 20 acres or more in the aggregate located in whole or in part within the Geographic Area.
In summation, we find the MFNC to be clear and unambiguous in its meaning and intent. If Petrohawk, within the first 12 months of the Stephenson leases, acquires a Third Party Lease affecting land or mineral rights located in whole or in part within the Geographic Area and pays more per acre than was paid to the Stephensons, then it is obligated to pay the difference to the Stephensons. However, a lease that covers less than 20 acres of land located in whole or in part within the Geographic Area will not be considered a Third Party Lease and will not obligate Petrohawk to pay an additional bonus unless the owner or lessor entered another lease with Petrohawk and together the leases cover 20 acres of more. In that case, the lease will be considered a Third Party Lease and will trigger the MFNC even though the tract which is located in whole or in part in the Geographic Area is less than 20 acres.
This interpretation gives meaning and effect to each part of the MFNC. Though *1154 Petrohawk posited an alternative view of the language of the 20-acre limitation, its strained interpretation ignores the plain meaning of the MFNC, leads to absurd results, and does not conform to either the purpose of the MFNC as expressed in its general rule or to the objective of the last provision concerning multiple leases by the same owner or lessor. We do not find any genuine issue of material fact for trial regarding the parties' intent or the MFNC's meaning, both of which are determinable from the four corners of the provision.[3] Therefore, there is no ambiguity in the MFNC such that it can be said to be fairly susceptible of more than one interpretation.
The Frierson lease was acquired by Petrohawk within the first 12 months of the Stephenson leases. It affects lands and mineral rights located in whole or in part within in the Geographic Area set forth in the MFNC. Petrohawk paid the Friersons a lease bonus of $18,500 per acre, whereas it had paid the Stephensons bonus payments totaling $6,500 per acre. The Frierson lease is not a lease from a governmental entity. Most importantly, it is not "a lease covering a tract of land of less than 20 acres." Rather it is a lease that covers multiple tracts and more the 4,000 acres. The Frierson lease is a Third Party Lease that triggers the MFNC benefit. Therefore, Petrohawk is obligated under the MFNC to pay the Stephensons the difference between the more favorable lease bonus paid under the Frierson lease and what it has already paid to the Stephensons.

CONCLUSION
For the reasons explained, we affirm the judgment in favor of the Stephensons and against Petrohawk in the amount of $1,920,000.00, plus legal interest from date of demand. Costs of appeal are assessed to Petrohawk.
AFFIRMED.
BROWN, C.J., concurs with written reasons.
BROWN, Chief Judge, concurring.
The last provision of the MFNC in the Stephenson leases is clear. This multiple lease exception prevents Petrohawk from obtaining multiple small leases from the same owner to avoid the implementation of a MFNC in a neighboring lease. In this case, Petrohawk obtained multiple tracts (leases) from the same owner (Frierson) that in the aggregate covered more than 20 acres. As a result, the MFNC in the Stephenson leases was activated.
NOTES
[1] The January 28, 2009, letter sent by the Stephensons to Petrohawk references a prior demand letter dated January 14, 2009, which is not included in the record.
[2] As acknowledged at oral argument, this repetition of the same phrase is a typographical error. We note the only difference to be between the references to "Geographic Areas" and "Geographic Area."
[3] As an alternative basis for summary judgment, La. C.C. art. 2057 explains that if "doubt arises from lack of a necessary explanation that one party should have given" we are to interpret the contract "in a manner favorable to the other party whether obligee or obligor." Because the 20-acre limitation is an operative benefit in favor of Petrohawk, it would be Petrohawk's burden to provide the "necessary explanation" for the effect of this beneficial provision. The mutual intent of the parties concerning the negotiations and drafting of the 20-acre lease limitation should have been produced by Petrohawk in opposition to the Stephensons' motion for summary judgment. See La. C.C.P. art. 966(C)(2). Instead, Petrohawk submitted only the affidavit of its district land manager stating that Petrohawk intended that the MFNC would not be triggered by a lease with only de minimis acreage located in whole or in part within the Geographic Area. This statement of Petrohawk's interpretation sheds no light on the mutual intent of the parties, the negotiations surrounding the MFNC, or its drafting. In the absence of evidence of the mutual intent of the parties, we would apply the rule of construction of Article 2057, as stated above, for the Stephensons' benefit.