GARRETT, J.
_JjThe defendant, PVR America, Inc. (“PVR”), appeals from a trial court judgment ordering it to pay the plaintiff, Data-Core Systems, Inc. (“Data-Core”), more than $80,000 for services rendered pursuant to their contract. We affirm the trial court judgment.
FACTS
Data-Core is an information technology (“IT”) services company which provides its services to clients either as a complete project or as staff supplementation. It is a Delaware corporation with a principal place of business in Philadelphia, Pennsylvania. PVR is also a Delaware corporation, and its principal business establishment was in Ruston, Louisiana.[1] Its business is locating technical services personnel for various clients and then, acting as a conduit, introducing them to the clients.
In September 2012, these parties entered into a six-month “supplier agreement” for the period of October 2012 to March 2013, with a 30-day termination option. The form contract was prepared and furnished by PVR.
In relevant part, the contract states as follows: ■
This AGREEMENT made effective September U 2012, between PVR AMERICA INC., ... (hereinafter “PVR AMERICA”) and Data-Core Systems Inc. ... (hereinafter “Supplier”), ...
WHEREAS PVR America’s business is locating technical services personnel for various clients, including the client (hereinafter “Client”) listed in any Purchase Order (Exhibit A) executed by PVR AMERICA and Supplier and attached to this Agreement, to provide technical services to Client according to the Client’s specifications; and
WHEREAS Supplier agrees that PVR .AMERICA will spend substantial resources and time evaluating, qualifying, proposing and/or providing Supplier’s technical services personnel to Client, *390 and that PVR AMERICA was selected by Client to provide such ^personnel to Client at the Client locations listed, in any attached Purchase Order; and
WHEREAS Supplier is in a similar business and desires to join efforts with PVR AMERICA for the purpose of providing qualified candidates for the Client of PVR AMERICA; and
WHEREAS PVR AMERICA and Supplier wish to. enter into an Agreement pursuant to which Supplier will intrp-duce technical services personnel candidates to PVR AMERICA and PVR AMERICA may submit said technical services personnel to provide their services to Cliént.
NOW THEREFORE, in consideration of the mutual promises and covenants, the parties agree as follows:
[[Image here]]
2) BILLING AND PAYMENT If Supplier’s candidate/s are selected by Client to provide services, SUPPLIER will be paid by PVR AMERICA in accordance with a Purchase Order (Exhibit A) to be attached hereto for each- individual who provides such services through PVR AMERICA. PVR AMERICA will submit payment to Supplier based on the billable time approved by Client in writing on timesheets submitted by Supplier’s technical services personnel.
Billable time shall be defined as the time (i.e., hours, days) the Supplier’s technical services personnel has worked at the Client site that is recorded on PVR America’s timesheet, has been approved by an authorized representative of the Client, and is billable by PVR AMERICA to the Client. Unless otherwise specified, the period for reporting time is every month on 31st. The Supplier must email or fax, or cause Supplier’s employee to email or fax, the timesheet to PVR AMERICA no later than the third business day following the end of each such period.
By the 10th day of each month, Supplier will submit an invoice for the previous calendar month to PVR AMERICA for Supplier’s services to the Client for the time approved by the Client on the signed timesheets. No payments will be made to Supplier without such invoice and timesheets. Payment of such invoice will be made in accordance with this paragraph, except in the case of a material breach of this agreement by Contractor, or in the case of an irreconcilable job-related performance by Supplier’s Employee. Supplier’s invoice should reflect the number of client approved billable hours worked during each period. Should Supplier’s technical services personnel be required to complete a Client timesheet along with PVR America’s timesheet, the Supplier must ensure that the same time is recorded on both timesheets, in order to ensure the proper payment to be made to Supplier. This is critical information for Client billing and PVR America’s payment to Supplier. PVR AMERICA shall pay Supplier’s invoices on a Net 45 day basis from receipt of Supplier’s monthly | .¡invoice or within 10 days that PVR gets paid from the client whichever occurs latter [sic]. ■
[[Image here]]
6) NOTICE OF TERMINATION Supplier may terminate this agreement in the event PVR America Inc. materially breaches a term or condition of the agreement and such material breach has not been cured within thirty (30) business days of PVR America’s receipt of written notification of such material breach, however that PVR AMERICA may terminate upon shorter notice, or no notice for any reason. Supplier’s 30 day written notice shall be sent via certi *391 fied mail, return-receipt requested, and shall commence on the actual calendar date that it is received. Further, should Supplier desire to terminate this agreement, PVR AMÉRICA shall have the right to request the continuance of the related purchase orders until such minimum time requirements have been met....
[[Image here]]
18) LAW The internal laws of the state of Louisiana and Lincoln Parish shall govern this agreement, ... and any lawsuits pertaining to the Agreement ... shall be decided in ... Louisiana/Lincoln Parish....
19) BREACH Since monetary damages are difficult to ascertain and are likely to be inadequate to compensate either party in the case of any breach of this Agreement by the other party, the parties agree that either party shall be entitled to injunctive relief (both temporary and permanent) for any breach or proposed breach of this Agreement. In addition, the party, who is found to have breached this Agreement shall be liable for any damages, costs and fees incurred by the other non-breaching party and relating to such breach. Each party also agrees to indemnify and hold harmless the other for any and all losses, costs and other liabilities incurred, including costs and fees, relating to any breach of the obligations set forth herein. (Emphasis original.)
Pursuant to this contract, one of Data-Core’s employees, Amith Prabhakaran, was assigned to work on a project for PVR’s client, Hyundai-HISNA, in California. Under the contract, Data-Core billed PVR on an hourly basis for Mr. Prabha-karan’s work. Invoices were sent on a monthly basis. During this project, Mr. Prabhakaran unexpectedly traveled to India on or about November 16, 2012, due to a family medical emergency and never returned to the project site. PVR refused to pay any of the invoices it received from Data-Core for any of the services he rendered prior to his departure.
| ¿Data-Core filed suit against PVR in Lincoln Parish on April 15, 2013. The petition stated that, between September 30, 2012, and November 30, 2012, Data-Core invoiced PVR in the amount of $30,581.25 for services provided and that PVR failed to pay. Data-Core claimed that it provided services under their contract in a good and professional manner and that PVR breached the contract by failing to pay in full for the services rendered. In addition to the breach of contract allegations, Data-Core also contended that PVR was liable under the open account statute, La. R.S. 9:2781, and sought attorney fees. It also requested contractual interest on the unpaid invoices.[2] .Alternatively, Data-Core sought recovery under a theory of unjust enrichment.
In response to the lawsuit, Sandeep Pa-ruchuri, PVR’s owner and president, filed a notarized letter addressed to the clerk of court. He maintained that Data-Core was the party which breached their contract when its employee, Mr. Prabhakaran, “absconded” from PVR’s client in the middle of a contract term with no prior notice. He asserted that this caused irreparable harm to PVR. He alleged other contract breaches, including late invoices, failure to provide notice of termination, and breach of confidentiality.
*392 In September 2013, Data-Core moved for summary judgment. In addition to the $30,581.25 in unpaid invoices, it requested interest of 10 percent per annum, and attorney fees of 25 percent. The motion was supported by an affidavit from Data-Core’s chief executive officer (“CEO”), Shayamal Choudhury, which corroborated the facts alleged in Data-Core’s | spetition. Also attached were copies of the contract, the purchase order, invoices for Mr. Pra-bhakaran’s services, and his timesheets during the Hyundai project. In March 2014, PVR filed an opposition to the motion for summary judgment.[3] Attached to the opposition were several emails discussing the circumstances of Mr. Prabhakar-an’s departure and the ensuing fallout with PVR’s client. A hearing was held on April 17, 2014. On April 30, 2014, the motion for summary judgment was denied without any reasons being provided.
In June 2014, the trial court set the matter for trial on February 4, 2015. In December 2014, Date-Core reurged the motion for' summary judgment on the basis of PVR’s failure to respond to requests for production of documents and for admissions. This motion was heard by a different judge. PVR was not represented at this time, but Mr. Paruchuri appeared in court and attempted to present arguments. He acknowledged that he was aware of the upcoming trial date. The new judge strongly encouraged Mr. Paruchuri to obtain counsel. In January 2015, the motion for summary judgment was denied again. New counsel enrolled for PVR in late January 2015. Both sides agreed to a continuance, and trial was reset for March 19, 2015.
On the day of trial, counsel for PVR orally sought another continuance, which Data-Core opposed. After the trial court denied the motion to continue, counsel for PVR attempted to file a reconventional demand against Data-Core. However, the trial court did not grant leave of |ñcourt for the filing.[4] Trial then commenced. Mr. Paruchuri was not present at trial.
The only witness to testify was Mr. Choudhury, Data-Core’s CEO. He testified that the form of the contract was not one his company provided and that PVR submitted the contract draft. The agreement was for a six-month term from the first week of September 2012 to March 2013. An hourly rate of $70 was initially charged but later reduced to $63 at Hyundai’s request. Mr. Prabhakaran left the Hyundai project on November 16, 2012, due to the sudden, serious illness of his father-in-law in India. Mr. Prabhakaran offered to continue the project work remotely from India, but PVR did not accept that offer. Additionally, Mr. Choudhury testified that PVR never requested that Data-Core supply a replacement for Mr. Prabhakaran. On December 11, 2012, Data-Core informed PVR by email that Mr. Prabhakaran would not be returning to the project. Mr. Choudhury testified that he was never provided any evidence of any damages suffered by PVR as a result of Mr. Prabhakaran’s withdrawal from the project. He also stated that he and his *393 attorney had agreed upon attorney fees of 25 percent. Numerous documents corroborating Mr. Choudhury’s testimony were introduced into evidence.
PVR’s counsel cross-examined Mr. Choudhury about portions of the contract. When discussing the section that provided that payment was due within 10 days of PVR receiving payment from its client, Mr. Choudhury acknowledged that Data-Core had no way of knowing when PVR received |7such payments. He also stated that, in a typical staff supplementation, there is no particular quantity of project to be finished, just day-to-day work. He also said that Hyundai must have been satisfied with the work that was performed; otherwise, the timesheets would not have been approved and signed.
Mr. Choudhury further testified that PVR never supplied him with any proof that it was not paid by Hyundai. He explained that overtime was billed separately because the client had asked Mr. Prabhakaran to work beyond straight time hours and not bill it for those services. After consulting with Data-Core, Mr. Pra-bhakaran declined to do so, and the client agreed to pay the overtime. After the plaintiff rested, the defendant did not call any witnesses or present any evidence.. At the conclusion of the trial, the court requested that the parties submit post-trial briefs, and the matter was taken under advisement.
On May 7, 2015, the trial court issued written reasons for judgment, in which it found that Data-Core was entitled to recovery of the $30,581.25 because Mr. Pra-bhakaran provided services to PVR pursuant to the contract and that there was no evidence that the work was unsatisfactory. The court also noted PVR’s failure to present any testimony or evidence.
Since Mr. Choudhury testified without contradiction that the contract was prepared by PVR, the court ruled that any ambiguities in the agreement woúld be construed against PVR. Based upon Mr. Choudhury’s testimony and the emails admitted into evidence, the court found that Data-Core “did not perform according to the agreement.” ‘ However, it determined that the contract did not specify what would happen in such an event. Finding that this ambiguity or omission in the contract should be construed against PVR, |Rthe court concluded that PVR was not absolved from its obligation for legitimate charges and that the agreement gave “no hint as to how this impasse would be resolved.” Consequently, it found that PVR owed Data-Core the $30,581.25 reflected on the invoices.
As to PVR’s argument that Hyundai’s alleged nonpayment to PVR constituted a defense for PVR to avoid paying Data-Core, the trial court found that PVR had the burden of proving Hyundai’s nonpayment. Inasmuch as PVR presented no evidence at trial,' the court declined to consider this issue. Again, it noted that the agreement failed to provide any remedy for Data-Core if Hyundai did not pay and that this omission should be construed against PVR.
The trial court denied Data-Core’s request for attorney fees[5] and 10 percent interest.[6] Finally, the court ruled that its *394 decision - was without prejudice to any claim PVR might have against Data-Core for its failure to provide services required under the agreement.
Judgment was signed June 3, 2015. It awarded Data-Core $30,581.25 for services provided to PVR, plus judicial interest in the amount of $2,567.15 (representing interest from April 15, 2013, through May 20, 2015) with judicial interest continuing to accrue , until payment , of the principal amount, and court costs of .$3,998.87. The judgment also specified that it was without prejudice and would not constitute res ju-dicata against any claim PVR might have against Date-Core for breach of the September 2012 contract.
|flOnly PVR has appealed.[7] It questions the trial court’s findings and interpretation of the agreement.
LAW
' In interpreting contracts, courts are guided by the general rules stated in La. C.C. arts.2045-2057. The cardinal rule is that the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045; Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183; Hollenshead Oil & Gas, LLC v. Gemini Expls., Inc., 45,389 (La.App.2d Cir.7/21/10), 44 So.3d 809, writ denied, 2010-2046 (La.11/12/10), 49 So.3d 892.
When the words of a contract áre clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. C.C. art, 2056.
The determination of whether a contract is clear or ambiguous is a matter of law. Stephenson v. Petrohawk Properties, L.P., 45,296 (La.App.2d Cir.6/2/10), 37 So.3d 1145; Town of Haynesville, Inc. v. Entergy Corp., 42,019 (La.App.2d Cir.5/2/07), 956 So.2d 192, writ denied, 2007-1172 (La.9/21/07), 964 So.2d 334. Factual findings which are pertinent to the interpretation of a contract will not be disturbed absent manifest error. Hollenshead Oil & Gas, LLC v. Gemini Expls., Inc., supra.
| inAmbiguity exists as to the parties’ intent when the contract lacks a provision on the issue or when the language of the contract is uncertain or fairly susceptible to more than one interpretation. Stephenson, supra; Rogers v. Horseshoe Entertainment, 32,800 (La.App.2d Cir.8/1/00), 766 So.2d 595, writs denied, 2000-2894 (La.12/8/00), 776 So.2d 463, 2000-2905 (La.12/8/00), 776 So.2d 464; Skannal v. Jones Odom Davis & Politz, L.L.P., 48,016 (La.App.2d Cir.9/25/13), 124 So.3d 500, writ denied, 2013-2887 (La.2/21/14), 134 So.3d 584.
In contracts providing for continuous or periodic performance, the effect of the dissolution shall not be extended to any performance already rendered. La. C.C. art. 2019. As to services rendered in accordance with the parties’ agreement, the contractual fee provision is enforceable. Lester v. Lester, 516 So.2d 219 (La.App. 4th Cir.1987).
*395 DISCUSSION .
Of particular relevance in this case are the following two sentences of the billing and payment section of the contract. They state:
Payment of such invoice will be made in accordance with this paragraph, except in the case of a material breach of this agreement by Contractor, or in the case of an irreconcilable job-related performance by Supplier’s Employee.... PVR AMERICA shall pay Supplier’s invoices on a Net 45 day basis from receipt of Supplier’s monthly invoice or within 10 days that PVR gets paid from the client whichever occurs [later].
PVR argues that the first sentence provides that a “material breach” of the contract relieved it of its obligation to pay for work already performed and properly billed. Additionally, it apparently interprets the second quoted sentence as a “pay-if-paid” provision, instead of a “pay-when-paid” provision. Like the trial court, we find that these are not reasonable interpretations of the contract language.
In At the outset, we note that the “material breach” provision refers to a “Contractor.” This is an undefined term, which is used in only three instances in the contract. However, Mr. Choudhury testified that he believed it was a mistake and that it was intended to be “Supplier.” Based upon our review of the contract, we agree with him,
It is important to consider the “material breach” provision in the context of the agreement. The “material breach” provision is found in the Billing and Payment section of the agreement, which sets forth in some detail the procedure for documenting the time worked by the Supplier’s employee. This section mandates re-cordation of the time on PVR’s timesheets, approval of the recorded time by an authorized representative of the Client, and submission of an invoice for the approved time by the Supplier to PVR. It states that “[n]o payments will be made to Supplier without such invoice and timesheets.” It then provides that payment will be made in accordance with this paragraph of the agreement, except in the case of material breach of the agreement by the Contractor or in the case of an irreconcilable job-related performance by the Supplier’s Employee. The timetable for PVR’s payment of the Supplier is set forth in the last sentence of the paragraph.
Contrary to PVR’s argument, we find no basis for construing this vague “material breach” provision as somehow totally absolving PVR from its obligation to pay for the properly documented work. The term “material breach” is not defined in the contract. Given the context and placement of the provision, it may mean only a failure in the Supplier’s documentation of its employee’s time, not a failure to work until the end of the contract period. Since the provision is susceptible to more than one interpretation and the h ¡.agreement was drafted by PVR, we agree with the trial court that we must construe any ambiguity against PVR as the drafter of the document. Furthermore, the agreement fails to clearly set forth the consequences of a “material breach,” another failure which must be construed against PVR.
The evidence in the record demonstrates that Datar-Core followed all of the procedures set forth in the contract to obtain payment on a monthly basis for its employee’s work. PVR failed to present any evidence demonstrating otherwise. In light of Mr. Choudhury’s unrefuted testimony that there was no quantity of work to be performed under the contract and the evidence of Data-Core’s compliance with the monthly payment procedure, we find that PVR is obligated to pay for the *396 work performed under the contract and properly billed.
As to PVR’s claim that it was not required to pay Data-Core until it was paid by Hyundai, PVR failed to present any evidence at trial establishing that it never received payment from Hyundai, a factual matter peculiarly within its knowledge. See Artificial Lift, Inc. v. Prod. Specialties, Inc., 626 So.2d 859 (La.App. 3d Cir.1993), writ denied, 94-0112 (La.3/11/94), 634 So.2d 394. Furthermore, when dealing with a similar payment provision, this court found that, since the time of payment by the third party was indeterminable, payment to the subcontractor had to be performed “within a reasonable time.” Cahn Elec. Co. v. Robert E. McKee, Inc., 490 So.2d 647 (La.App. 2d Cir.1986). See also Southern States Masonry, Inc. v. J.A. Jones Const. Co., 507 So.2d 198 (La.1987). Contrary to PVR’s contention, the payment provision in the agreement does not absolve PVR from its obligation to pay under the circumstances presented in |13the instant case. In any event, we reiterate that PVR failed to present any evidence on this issue during the trial.
CONCLUSION
We find no error in the judgment which was rendered below. Accordingly, the trial court judgment is affirmed. Costs of this appeal are assessed to the appellant, PVR America, Inc.
AFFIRMED.

. The record indicates that, since suit was filed, the company has moved its offices to Texas.

. A line on Data-Core’s invoices to PVR stated: "Terms: Net 30 days. Interest @ 10% will be charged for overdue invoices.” However, the parties' agreement does not contain a corresponding provision pertaining to interest.

. In January 2014, counsel for PVR had enrolled. • However, in May 2014, the attorney sought to withdraw on the basis that he was retained to handle only the motion for summary judgment.

. Although counsel for PVR stated that he would seek an emergency writ on the matter, he did not do so. He handed a copy of the reconventional demand to opposing counsel in court. Data-Core's attorney stated on the record that he would accept the copy without admitting that service or filing of the pleading was proper.
On April 8, 2015, the trial court signed a judgment denying PVR’s oral motion for leave to file the reconventional demand.

. The trial court found that the open accounts statute was not applicable to this suit which was based upon contractual obligations. It also held that the contract did not specifically provide for an award of attorney fees. Furthermore, the court ruled that the record contained insufficient evidence as to the amount of time spent on ■ the case by Data-Core's attorney.

. The court limited Data-Core to legal interest.

. Data-Core did not appeal from the trial court's denial of its request for attorney fees and 10 percent interest.