814 So.2d 717 (2002)
Charles F. GAUTNEY, Plaintiff-Appellee,
v.
Eleanor Gleason GAUTNEY, Defendant-Appellant.
No. 35,398-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
*718 James D. Hall, Bossier City, for Appellant.
Linda S. Blackman, and Eskridge E. Smith, Jr., Bossiere City, for Appellee.
Before NORRIS, BROWN, GASKINS, CARAWAY and KOSTELKA, JJ.
CARAWAY, Judge.
This dispute concerns the employee spouse's public pension benefits which were being paid at the time of the parties' divorce. The non-employee spouse did not seek her community property share of the pension benefits, but instead obtained a judgment for permanent alimony. The amount of the alimony was less than her share of the pension benefits. Alimony was paid for seventeen years until the non-employee spouse filed a claim for partition of the pension and for an accounting for the pension income which was received totally by the employee spouse since the parties' divorce. The trial court denied the non-employee spouse relief based upon a finding of waiver of her rights. For the following reasons, we reverse in part and affirm in part.

Facts
Charles F. Gautney ("Charles") was employed as a fireman in 1955, approximately nine years before his marriage in 1964 to Eleanor Gleason Gautney ("Eleanor"). In March of 1979, Charles retired and began receiving defined benefits under the Fireman's Pension and Relief Fund. In 1980, Charles filed a petition for separation. In Eleanor's answer and reconventional demand, she alleged that the income from the pension was $1300 per month and that she was entitled to one-half of the pension benefits.
Although a separation judgment was never obtained, Charles later filed a petition for divorce in 1983. Again, Eleanor alleged her entitlement to one-half of the $1800 per month which Charles was receiving as his pension. Eleanor *719 also alleged that she was in necessitous circumstances and prayed for an award of permanent alimony and use of the family home.
On October 27, 1983, a judgment was rendered (hereinafter the "Alimony Judgment") which granted the divorce, awarded Eleanor custody of their child, allowed Eleanor use of the family home, and ordered $500 per month to Eleanor as child support and alimony. The Alimony Judgment also provided that upon the sale of the family home, the child support obligation would be $250 per month and Eleanor's alimony would be $400 per month. The Alimony Judgment was silent as to any community property matters. The Alimony Judgment states that all matters were tried and the minute entry for the trial showed that some evidence was adduced. However, the parties indicated in their testimony that because of the disputed issue of fault, they actually reached a compromise so that the Alimony Judgment was, in fact, a consent judgment.
When the parties could not agree to sell the family home, Charles filed a petition to partition the community property on November 15, 1984. Both parties filed descriptive lists which included the family home and its contents; neither list included Charles's fire department pension. Eleanor, unrepresented, filed her list in proper person. Charles obtained a default judgment (the "Partition Judgment") which stated:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Petitioner, Charles F. Gautney and against the defendant, Eleanor Gleason Gautney, awarding petitioner a partition of the community property affecting the community of acquets and gains formally existing between the parties.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the property formally existing between the parties be sold at Sheriff's Sale, that the debts of the community be paid, and that the proceeds thereafter be divided equally between the parties hereto.
Only the family home was subsequently sold at sheriff's sale.
Eleanor filed the instant petition for supplemental partition of Charles's retirement pension on March 10, 2000. She also sought a retroactive accounting for all benefits received by Charles since the 1983 divorce and Alimony Judgment. Charles answered the suit alleging that Eleanor's claims were "extinguished and/or satisfied through prior payments made by [Charles] to Eleanor." He also alleged that "the prior judgments in this matter settled the community property issues between the parties" regarding the pension and past benefits Charles received.
At trial of this dispute, Eleanor presented evidence that she was entitled to 30.5% of Charles's pension calculated under the formula of Sims v. Sims, 358 So.2d 919 (La.1978). She also filed evidence showing that since 1983, 30.5% of Charles's after tax pension benefits totaled $130,122.93.
In his defense, Charles introduced evidence that Eleanor received $82,000 in alimony since 1983. The evidence showed that at the time of trial, Charles was receiving $2820 per month from the pension. Since Charles is not eligible for social security benefits, the evidence showed that the pension was his primary source of retirement income.
After trial, the trial court denied the supplemental partition, holding that Eleanor's conduct before and after the Alimony Judgment of October 1983 and the community property partition of August 1985 indicated her intention to "waive her right *720 to now claim the retirement benefits as community property." Eleanor appeals.

Discussion
Eleanor argues that the pension plan was never partitioned in the prior adjudication. She also asserts that she is entitled to judgment against Charles for $130,122.93 plus legal interest for his failure to account to her for the income he received from their co-owned pension. We will separately examine each issuethe right to a partition of the disputed incorporeal right and the right to a personal judgment against Charles for his failure to account.

I.
The disputed public pension plan is an incorporeal right. La. C.C. art. 461; Robinson v. Robinson, 99-3097 (La.1/18/01), 778 So.2d 1105. In this case, the Fireman's Pension and Relief Fund's obligation to pay pension benefits is the incorporeal property right owned by the parties. The parties' co-ownership of the incorporeal right arose because pension rights were acquired, in part, during the existence of the parties' community property regime through the effort, skill or industry of Charles in his employment. La. C.C.P. art. 2341; Hare v. Hodgins, 586 So.2d 118 (La.1991). When the rights to a pension are acquired by the labor of the spouse partially during the community regime and partially before or after the community regime, Sims v. Sims, supra, establishes the method of apportioning the parties' co-ownership of the pension.
After termination of the community property regime, the provisions governing co-ownership apply to former community property. La. C.C. art. 2369.1. Any co-owner has a right to demand partition of a thing held in indivision. La. C.C. art. 807. Co-owners share the fruits and products of the thing held in indivision in proportion to their ownership. La. C.C. art. 798. A co-owner who fails to share the fruits or benefits derived from the co-owned property and disposes of those fruits or benefits owes an obligation to account to his co-owner. Ellwood Oil Co. v. Anderson, 26,907 (La.App.2d Cir.5/10/95), 655 So.2d 694, writ denied, 95-1485 (La.10/6/95), 661 So.2d 466.
The omission of a thing belonging to the community from the partition is grounds for a supplemental partition. La. C.C. arts. 1380 and 1401; Moreau v. Moreau, 457 So.2d 1285 (La.App. 3d Cir.1984). Accordingly, when a co-owned pension is omitted from the spouses' partition, the jurisprudence holds that each spouse continues as co-owner of the pension and is entitled to a supplemental partition. Robinson, supra, at 1119; Lamartiniere v. Lamartiniere, 520 So.2d 828 (La.App. 3d Cir.1987).
Regarding the issue of res judicata, which Charles raises in support of the trial court's ruling, the following law is applicable. Since the disputed 1983 and 1985 judgments occurred prior to Louisiana's revision of its res judicata statute in 1991, the preclusive effect of those judgments is determined by the law in effect prior to January 1, 1991 and not the newly enacted La. R.S. 13:4231, et seq., Section 5 of Acts 1990, No. 521. The prior law, under former Civil Code Article 2286, provided that res judicata applied only when: (1) the thing demanded is the same, (2) the demand is for the same cause of action, and (3) the suit is between the same parties. Sun Finance Co. v. Jackson, 525 So.2d 532 (La.1988).[1]
*721 Additionally, in keeping with Louisiana's narrow interpretation of res judicata before 1991, the doctrines of collateral estoppel and judicial estoppel were inapplicable in Louisiana at the time of these disputed judgments. Ugulano v. Allstate Ins. Co., 367 So.2d 6 (La.1978). An issue presented by the pleadings in a cause but eliminated from the judgment of the court cannot, without more, be invoked in support of the plea of res judicata. Lamana v. LeBlanc, 526 So.2d 1107 (La.1988); Hope v. Madison, 194 La. 337, 193 So. 666 (1940); Hoggatt v. Thomas, 35 La. Ann. 298 (1883).
The recent ruling by our supreme court in Robinson, supra, clearly reaffirms the view that a partition or community property settlement that does not specifically deal with a disputed pension right does not result in the employee-spouse acquiring all rights to the pension. In Robinson, the former spouses executed a partition which contained broad and general divestiture language purporting to release and relinquish all of the parties' claims to any asset of the former community. The husband, who was still employed at the time of the partition, claimed that he intended to receive any ownership claimed by his former wife to the expectancy of his public pension. The court determined that under our jurisprudence,
[G]eneral divestiture language does not necessarily divest the non-employee spouse of his or her right in the employee spouse's pension. When the agreement does not expressly address the employee spouse's pension, the issue of whether the agreement divests the non-employee spouse of any community property rights in the pension depends upon the intent of the parties. The pension plan was not listed in the parties' Agreement nor was it discussed as part of the settlement. Therefore, the pension was not partitioned. Both Mr. Robinson and Ms. Coleman are co-owners in indivision of the pension benefits, and we must remand this case to the trial court for a precise determination of the ownership rights of each party.
Id. at 1121. Although Robinson dealt with a contractual partition and compromise and not a partition judgment as in this case, the preclusive effect rejected by Robinson likewise does not apply in this case.
In the present case, the broad language of the Partition Judgment "awarding... a partition of the community property... formerly existing between the parties" did not specifically address the public pension. The pension was not listed on either party's descriptive list of assets filed in support of the Partition Judgment. The parties did not act to direct the payment of benefits to Eleanor for her proportionate 30.5% share. Thus, there is no showing that the thing demanded in the 1985 partition action encompassed the pension fund. When we apply Louisiana's narrow view of res judicata to the Partition Judgment, the judgment has no preclusive effect that would now bar Eleanor from this action for supplemental partition and recognition of her ownership interest in the pension.

II.
The second issue concerns Charles's receipt of the past income from the pension. Eleanor's demand, in this instance, does not seek the recognition of her ownership in an incorporeal right or a partition of the money Charles received. It seeks enforcement of an obligation or personal liability against Charles for his failure to account to her for the income he derived from the public pension. As Charles's defense, *722 he again asserts the preclusive effect of another judgment, the Alimony Judgment.
The substantive law for permanent alimony upon which the Alimony Judgment was awarded in 1983 was former Civil Code Article 160, which provided, in pertinent part:
A. When a spouse has not been at fault and has not sufficient means of support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income....
In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; ...
Like the present codal provisions, Eleanor's award of permanent alimony was based upon both her financial need and Charles's ability to pay. See, La. C.C. arts. 111 and 112.
Prior to the conflict in their marriage, Eleanor and Charles were receiving the monthly income from the pension as their community property. Eleanor was therefore aware of the community income during the marriage, and before the 1983 Alimony Judgment, she twice filed pleadings claiming her entitlement to one-half of those benefits. Nevertheless, in 1983, the Alimony Judgment was rendered in Eleanor's favor, which would ultimately provide her with $400 per month after the principal item of community property, the family home, was sold. The law and circumstances regarding this Alimony Judgment and the testimony in this case demonstrate that at that time, Eleanor was determined to have insufficient means of financial support. Thus, the alimony obligation was established to be paid out of Charles's earnings, including the $1518 per month he was then receiving in pension benefits.
By obtaining the $400 per month alimony judgment to supplement her financial means, Eleanor effectively asserted before the court that she was not entitled to receive 30.5% of the $1518 per month pension, or $463 per month, and that Charles was receiving all of the retirement benefits attributable as his income and from which the alimony could be paid. Thus, it would have been inconsistent for Eleanor to have asserted that her income was actually $463 more per month when she obtained the $400 per month Alimony Judgment against Charles to supplement her deficient financial means.
Moreover, alimony judgments are not subject to retroactive adjustment for changes in the financial circumstances of a spouse that occur prior to a suit for alimony modification. Hogan v. Hogan, 549 So.2d 267 (La.1989). Therefore, Eleanor's present claim for 30.5% of the pension income retroactive to the time of divorce, if awarded, may not be reduced by the $82,000 in paid alimony. Charles's past alimony payments may not be construed as the "payments of a thing not due" despite Eleanor's retroactively adjusted financial means.
Under these unique circumstances, the trial court's determination of waiver by Eleanor of Charles's obligation for accounting is supported by our law regarding remission of debt and waiver. Civil Code Article 1888 provides that a remission of debt by an obligee extinguishes the obligation and that the remission may be express or tacit. All that is required under the remission articles is a determination that the creditor intended to remit his claim or that he has estopped himself to claim the contrary. Arledge v. Bell, 463 So.2d 856 (La.App. 2d Cir.1985); Cowley Corp. v. Shreveport Packing Co. Inc. of Kansas, 440 So.2d 1345 (La.App. 2d *723 Cir.1983), writ denied, 444 So.2d 122 (La. 1984). While the remission of a debt cannot be revoked by a creditor, remission is never presumed unless it clearly appears that the creditor intended it. The burden of proving remission, express or tacit, rests with those claiming the benefit. Arledge, supra. The jurisprudence also provides that waiver occurs where there is a knowledge of the existence of a right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right so as to induce a reasonable belief that it has been relinquished. Rogers v. Horseshoe Entertainment, 32,800 (La.App.2d Cir.8/1/00), 766 So.2d 595, writ denied, 2000-2905 (La.12/8/00), 776 So.2d 464.
Eleanor's knowledge in 1983 of her right to a portion of the income from the pension is undisputed. Her conduct in seeking the enforcement of her right to permanent alimony based upon the parties' financial means and in receiving alimony was inconsistent with any intent to enforce Charles's obligation to account for his receipt of pension benefits. This effectively induced Charles to pay the alimony in the belief that Eleanor relinquished her claims to the pension benefits as they accrued over the years. Given Charles's reliance, the payment of the alimony obligation would be to his detriment since the alimony obligation may not be retroactively adjusted.
In reaching our judgment that remission of debt or waiver applies in this case to the obligation owed by Charles to Eleanor, we distinguish this ruling from the issue of Eleanor's ownership interest in the underlying incorporeal property right. Our ruling recognizing Eleanor's ownership in the incorporeal property right and her right of partition means that she can seek to obtain payment directly from the third party, the Fireman's Pension and Relief Fund. The Robinson ruling is clear that the non-employee spouse's ownership interest in the incorporeal pension right cannot be waived and assigned in favor of the employee spouse without a specific description of the pension plan contained in an act of assignment, settlement or partition. Robinson did not address the issue of the employee spouse's obligation to account to the non-employee spouse for retirement benefits which he has received and whether that obligation may be tacitly remitted by the obligee. Under the unique facts of this case, Charles's obligation to account was remitted or waived by Eleanor's actions.

Conclusion
For reasons set forth above, Eleanor's receipt of the alimony payments through the years prior to this suit served as a waiver of Charles's obligation to account for the income stream generated from the incorporeal right which she now belatedly seeks to partition. In obtaining the Alimony Judgment, her representations to the court of her insufficient financial means and her receipt of alimony under that judgment preclude her from now obtaining the past income from the pension which was paid to Charles prior to the institution of this suit. Likewise, since the issue of Charles's obligation to pay alimony was presented as a defense at trial, we find that our judgment of partition of the pension fund in favor of Eleanor represents a substantial change in circumstances requiring the termination of Charles's alimony obligation as of the date of Eleanor's judicial demand, March 10, 2000.
Accordingly, it is hereby ordered, adjudged and decreed that as of March 10, 2000, Eleanor Gleason Gautney is recognized as owner of 30.5% of the Fireman's Pension and Relief Fund of Charles F. *724 Gautney. It is further ordered, adjudged and decreed that Charles F. Gautney shall account to Eleanor Gleason Gautney for all pension benefits received by him since March 10, 2000, with a credit for all alimony paid by him since that date. It is further ordered, adjudged and decreed that Charles F. Gautney's obligation for alimony is hereby terminated. Costs of appeal are assessed to appellee.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
BROWN, J., concurs with reasons.
NORRIS, C.J., concurs in part and dissents in part with reasons.
BROWN, J., Concurring.
I concur in the majority opinion because it reaches a more equitable resolution than that proposed in the dissent. However, I would have gone further.
Whether the pension was considered and disposed of in the divorce proceedings was a question of fact. The trial court is afforded great discretion and should not be reversed unless clearly wrong or manifestly in error. Robinson v. Robinson, 99-3097 (La.01/17/01), 778 So.2d 1105. Considering the circumstances set forth in the majority opinion, I would have affirmed the trial court's conclusion that Eleanor Gautney waived her right to a portion of Charles Gautney's pension in return for permanent alimony.
Unfortunately, the attorneys for both parties had passed away in the seventeen intervening years and their records were unavailable as to what was discussed and agreed to concerning the pension. The trial court, however, heard from both parties and was not clearly wrong in believing Charles's testimony. I agree with the trial court that Eleanor waived her right to part of Charles's pension in return for appropriate consideration. Also, this issue was clearly raised and settled in the prior litigation and res judicata would bar Eleanor's renewed action seventeen years later. See former Civil Code article 2286; Thurston v. Thurston, 31,895 (La.App.2d Cir.08/20/99), 740 So.2d 268.
Laches "is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." Black's Law Dictionary 787 (5th ed. 1979). This is applicable to the facts of this case. Eleanor received alimony from Charles for seventeen years and then sought to recover a share of his pension retroactively back to the date of their separation. The delay was entirely Eleanor's fault and worked to her benefit. The purpose of the doctrine of laches is to prevent an injustice that results from the assertion of a long neglected right. This common law doctrine is only applicable in Louisiana in rare and extraordinary circumstances. See T.D. v. M.M.M., 98-0167 (La.03/02/99), 730 So.2d 873. In this case, the attorneys for both parties died in the intervening seventeen years and the ability to ascertain what was considered and settled in the prior litigation was compromised. The delay significantly prejudiced Charles. Eleanor's neglect in asserting her claim and the resulting prejudice should bar her present action.
NORRIS, Chief Judge, concurs in part and dissents in part.
I concur in the majority's judgment insofar as it appears to award Eleanor a prospective supplemental partition, effective from the date of judicial demand.
Out of perplexity, however, I must dissent from the majority's legal conclusion that Eleanor waived her right to demand a share of pension proceeds received by Charles prior to judicial demand. I say waived, although the majority is not really clear whether it utilized waiver, estoppel, remission of a debt or detrimental reliance, *725 or a combination thereof, as the theory by which it reaches its conclusion. Suffice it to say none of these defenses was pled by Charles or addressed by the trial court in its disposition, except for waiver. Charles has not raised the issues of remission of a debt or detrimental reliance in his appellate brief. To utilize these theories to fashion relief at this juncture results in denying one party the opportunity to respond. Eleanor's action to partition this asset is imprescriptible. La. C.C. art. 817; Terrebonne v. Theriot, 94-1632 (La.App. 1 Cir. 6/23/95), 657 So.2d 1358. The mere fact that she did not do so for a long period of time cannot constitute a waiver; a specific waiver is required. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280. This record will not support a finding of waiver or any of the other theories pressed into service by the majority.
I also question the method by which the majority terminates alimony payments. Charles has never prayed for this relief, explicitly or implicitly. The majority cites Hogan v. Hogan, 549 So.2d 267 (La.1989), yet this case actually holds that relief from an alimony obligation "may be granted only from and after the time it is sought by an appropriate pleading." Id., at 273.
I would grant the supplemental partition and remand to the trial court, allowing Charles to assert any offset defenses he might have as to the retroactive amount due. Then, after a hearing, the trial court could fashion an appropriate judgment. To fashion relief as the majority has done disregards the rules of pleading and appellate review.
KOSTELKA, J., concurs in part and dissents in part for the reasons assigned by C.J. NORRIS.
NOTES
[1] Even after 1991, La. R.S. 13:4323(B) retains the traditional pre 1991 civil law approach to res judicata for post-1991 judgments relating to divorce and its incidental matters, including the partition of community property.