| VAN ROBIN AND OYSTER FISHERIES, INC. | * | NO. 2021-CA-0737 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| COURTNEY CREIGHTON-SMITH | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 20-0596, DIVISION "D"
Honorable Darren M Roy,
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**ATKINS, J., CONCURS IN THE RESULT.**

Steven M. Mauterer
BLUE WILLIAMS, LLC
3421 N. Causeway Blvd.; Suite 900
Metairie, LA 70002

Stephen Skelly Kreller
Katie M. Cusimano
THE KRELLER LAW FIRM
757 St. Charles Avenue; Suite 301
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLEE

Paul A. Tabary, III
TABARY AND BORNE, LLC
Three Courthouse Square
Chalmette, LA 70043

Joseph S. Piacun
Reid S. Uzee
GENNUSA PIACUN & RULI
1340 Poydras Street, Suite 2100
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**MAY 11, 2022**

RLB

TGC

In this contract case, Defendant, Courtney Creighton-Smith (Smith), seeks review of the trial court's declaratory judgment in favor of Plaintiffs, Van Robin and Oyster Fisheries, Inc. (OFI), which confirmed the existence of an oyster sub-lease between the parties. For the following reasons, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 1993, Mr. Robin and Mrs. Smith were engaged to be married.[1] Prior to their nuptials, Mrs. Smith, with the assistance of Mr. Robin, submitted an application for an oyster lease located at Christmas Camp Lake, in St. Bernard, Louisiana, with the Louisiana Department of Wildlife and Fisheries. On October 3, 1994, the Louisiana Department of Wildlife and Fisheries and Mrs. Smith executed a Lease of Waterbottoms for Oyster Purposes for a period of fifteen (15) years. The Oyster Lease is identified by number 34005 (Oyster Lease). The terms of the Oyster Lease specifically set forth an expiration date of January 1, 2009. In

---

[1] The couple was later married in 1994. It is undisputed that prior to the marriage, the couple entered into a separate property agreement. The couple divorced on July 23, 2004.

accordance with the law, Mr. Robin recorded the Oyster Lease in the conveyance records of St. Bernard Parish on November 10, 1994.[2]

Later, on October 30, 2001, Mrs. Smith entered into a Sub-Lease agreement (Sub-Lease) with OFI and Mr. Robin, in his capacity as President of the company. The terms of the Sub-Lease transferred the property rights and responsibilities contained in the Oyster Lease to OFI.[3] Mr. Robin recorded the Sub-Lease in the Conveyance Records for the parish on November 2, 2001.

Prior to the expiration of the Oyster Lease, the Louisiana Department of Wildlife and Fisheries and Mrs. Smith executed a renewal for an additional fifteen years, through January 1, 2024. The Oyster Lease Renewal is identified by number 34005-09 (Oyster Lease Renewal).[4]

---

[2] *See*, La. R.S. 56:426(B), which states:

> All persons to whom water bottoms leases are granted shall, within thirty days following the granting thereof, record an executed copy of such lease or leases, together with a plat or map of survey indicating the area affected, in the conveyance records of the parish or parishes of the state of Louisiana in which the area is located. Within twenty days from such recordation, certified copies of the plat or map of survey shall be filed with the department. Transfers of leases from one person to another shall be likewise recorded and filed.

[3] The contract at issue appears to be an assignment of the Oyster Lease to Mr. Robin, wherein Mrs. Smith transferred her entire interest in the lease. *See* La. C.C. art. 3506(5*); Hoover Tree Farm, L.L.C. v. Goodrich Petroleum Co.*, 46,153, p. 26 (La. App. 2 Cir. 3/23/11), 63 So.3d 159, 174, ("the distinction between an *assignment of a lease* and a *sublease* is that, in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased-by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor.").

[4] La. R.S. 56:428(B) states, in relevant part:

> The secretary has sixty days from the date of expiration of a lease to execute a renewal lease. If a renewal lease is not executed within this sixty-day period, the lease is automatically renewed. In either situation, the fifteen-year period of the renewal lease shall begin on the first day following the expiration date of the prior lease, and the renewal lease shall be assigned the same number used for the prior lease with the addition of a designation to indicate which year the lease was renewed.

During the course of both lease periods, OFI met its obligations and responsibilities under the Sub-Lease. Specifically, OFI paid the annual rent payments from 1994-2015. However, in 2016, Mrs. Smith unilaterally decided to pay the annual rent for 2016. Thereafter, she continued making the annual payments. On January 8, 2019, counsel sent Mr. Robin a letter on behalf of Mrs. Smith notifying him that she considered the Sub-Lease to be terminated and/or cancelled.

In response, litigation ensued.[5] Mr. Robin filed this Petition for Damages, which included a Request for Declaratory Judgment stating that the Sub-Lease had not expired.[6] Subsequently, the case was removed to federal court. Once the federal court remanded the case back, Mrs. Smith answered[7] and the case eventually proceeded to trial.[8] After a trial on the merits, the trial court rendered a Declaratory Judgment in favor of Mr. Robin, finding that the Sub-Lease was not terminated; thus, it remained effective. This devolutive appeal followed.

---

[5] Prior to this litigation, Mrs. Smith filed a Petition for Declaratory Judgement in the 19th Judicial District Court for East Baton Rouge Parish on January 3, 2018. *Smith v. State of Louisiana, by and through the Dept. of Wildlife and Fisheries et al.*, C-677824. The case was voluntarily dismissed with prejudice on October 7, 2019.

[6] Along with the Request for Declaratory Judgment, the petition for damages included claims for breach of contract, unjust enrichment, and BP Oil property damage payments. The only judgment before us is the Declaratory Judgment issued by the trial court.

[7] With her answer, Mrs. Smith sought to file a reconventional demand, wherein she also requested a declaratory judgment invalidating the Sub-Lease. However, the trial court denied her leave to file the reconventional demand.

[8] In order to preserve the status quo, Mr. Robin received a temporary restraining order. The parties later agreed to a six-month preliminary injunction to prevent Mrs. Smith from conducting operations on the Oyster Lease.

## STANDARD OF REVIEW AND APPLICABLE LEGAL PRINCIPLES

La. C.C.P. art. 1871 provides that "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed." La. C.C.P. art. 1876 provides that "[t]he court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding." Additionally, La. C.C.P. art. 1873 specifically addresses declaratory judgments construing contracts and provides that "[a] contract may be construed either before or after there has been a breach thereof."

"It is well settled that with regard to the standard of review of a declaratory judgment action that '[o]n appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment.'" *Battle v. Watson Invs., Inc.*, 06-0202, pp. 2-3 (La. App. 4 Cir. 11/21/06), 946 So.2d 226, 228 (quoting *Edgar Benjamin Fontaine Testamentary Trust v. Jackson Brewery Marketplace*, 02-2337, pp. 4-5 (La. App. 4 Cir. 5/7/03), 847 So.2d 674, 677. Moreover, the Louisiana Supreme Court has held that "[t]rial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief." *Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts,* 00-2517, p. 3 (La. 2/21/01), 779 So.2d 726, 728.

Although this decision is subject to an abuse of discretion standard of review, the judgment itself is still reviewed under the appropriate standard of

review.  *Westlawn Cemeteries, L.L.C. v. Louisiana Cemetery Bd.*, 21-01414, 2022

WL 883914, at \*11-12 (La. 3/25/22) (citations omitted).  Thus, questions of law

are reviewed *de novo*, while questions of fact are subject to a manifest-error

standard of review.  *Id*. at \*12 (citation omitted).

## DISCUSSION

On appeal, the only issue before this Court is whether the trial court abused

its discretion in granting a declaratory judgment in favor of Mr. Robin.  In support

of her argument that the trial court abused its discretion, Mrs. Smith raises two

assignments of error: 1) Mr. Robin breached the Sub-Lease; and 2) the Sub-Lease

was null.

First, Mrs. Smith argues that Mr. Robin breached the Sub-Lease when he

failed to pay the 2016 annual rent.  Thus, she concludes that since Mr. Robin failed

to pay the rent, the Sub-Lease was terminated by its own terms in December of

2015, or, at the very latest, upon receiving notice of the cancellation on January 8,

2019.[9]

As discussed, the Oyster Lease requires the lessor to pay annual rent.  The

Sub-Lease incorporated the same terms as the Oyster Lease.  Specifically,

Paragraph II states: "The term of the lease shall be for the same period under the

original lease presently held by the sublessor, Courtney A. Creighton, at the same

---

[9] Notably, there is a specific statutory scheme that governs oyster leases. *See* discussion, *infra*. The general rule of statutory construction is that a specific statute controls over a broader, more general statute.  *Burge v. State*, 10-2229, p. 5 (La. 2/11/11), 54 So.3d 1110, 1113.  "It is a well-settled canon of statutory construction that the more specific statute controls over the general statute." *Id*. (internal quotation and citation omitted).  However, the issue raised does not concern the specific oyster lease law; rather, it involves a dispute between the two parties concerning the terms and performance of obligations under the contract.  Thus, general contract law applies here.

monetary terms, copy of which has been presented to Oyster Fisheries, Inc."
Paragraph III states: "Should the sublessor at any time violate any of the conditions
of the original lease held by Oyster Fisheries, Inc. then the sublessor shall have the
right to cancel this lease for the whole unexpired term."

It is undisputed that Mr. Robin did not pay the annual rent payments
beginning in 2016. However, the trial record reveals that he attempted to pay the
annual rent payments every year. In December of 2015, when he presented to the
Louisiana Department of Wildlife and Fisheries, they informed him that the annual
rent had already been paid. He returned every year and attempted to pay, while
paying the rents due on his other oyster leases. Each time, he was told that the
rents had been paid.

In addition, Mr. Robin testified that when he called Mrs. Smith to ask about
the unexpected payments, she informed him that she was going to start paying the
rent. While Mrs. Smith disputes this telephone call, she admits that she
unilaterally started paying the Oyster Lease at the end of 2015, on her own
volition, without communicating with Mr. Robin.

A trier of fact's factual conclusions regarding breach of contract claims are
typically governed by the manifest error standard of review. *See Brenner v.
Zaleski,* 14-1323, p. 3 (La. App. 4 Cir. 6/3/15), 174 So.3d 76, 79 (citation omitted).
Where there is conflicting testimony, reasonable evaluations of credibility and
inferences of fact should not be disturbed by the reviewing court. *Rosell v.
ESCO,* 549 So.2d 840, 844 (La. 1989). Where there are two permissible views of
the evidence, the trier of fact's choice between them cannot be manifestly
erroneous or clearly wrong. *Id.*

In its judgment, the trial court found that the Sub-Lease was not terminated; thus, it remained in effect. It is undisputed that Mr. Robin failed to pay the annual rent beginning in 2016. However, implicit in its finding is that Mr. Robin's obligation was extinguished or modified, therefore, he did not breach any of his obligations under the Sub-Lease.

In *Scott v. Bank of Coushatta*, 512 So.2d 356, 360 (La. 1987), the Louisiana Supreme Court explained the various ways to extinguish obligations:

> A civilian obligation may be extinguished by payment, La.Civ.Code Ann. Art. 1854 (West 1987), novation, [La.Civ.Code] art. 1879, or remission, [La.Civ.Code] art. 1888. The extinction of an obligation may also result from acts of the creditor which, under the factual circumstances in question, evidence intent to release the debtor. *Succession of Foerster*, 9 So. 17 (La.1891).

In addition, La. C.C. art. 1888 provides that a remission of debt by an obligee extinguishes the obligation and that remission may be express or tacit. And "[a]cceptance of a remission is always presumed *unless* the *obligor* rejects the remission within a reasonable time." *Discover Bank v. Nelson*, 11-1284, p. 2 (La. App. 4 Cir. 2/29/12), 86 So.3d 80, 83, *writ denied*, 12-0730 (La. 5/18/12), 89 So.3d 1195 (Bonin, J., dissenting) (emphasis in original) (citing La. C.C. art. 1890).

All that is required under the remission articles is a determination that the creditor intended to remit his claim or that he has estopped himself to claim the contrary. *Gautney v. Gautney*, 35,398, p. 10 (La. App. 2 Cir. 4/3/02), 814 So.2d 717, 722-23 (citations omitted). "While the remission of a debt cannot be revoked by a creditor, remission is never presumed unless it clearly appears that the creditor intended it. The burden of proving remission, express or tacit, rests with those

claiming the benefit." *Id.*, p. 10, 814 So.2d at 723 (citation omitted). A waiver occurs where "there is a knowledge of the existence of a right, coupled with either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right so as to induce a reasonable belief that it has been relinquished." *Id.* (citing *Rogers v. Horseshoe Entertainment*, 32,800 (La. App. 2 Cir. 8/1/00), 766 So.2d 595, *writ denied*, 00-2905 (La. 12/8/00), 776 So.2d 464.

In this case, Mrs. Smith's knowledge of Mr. Robin's obligation to pay the annual rent under the Sub-Lease is undisputed. However, her conduct in unilaterally deciding to pay the annual rent beginning with the 2016 annual payment was inconsistent with any intent to enforce Mr. Robin's obligation to pay. This effectively prevented Mr. Robin from paying the rent in the belief that Mrs. Smith waived her claim to enforce the rent payment obligation. As a result, Mrs. Smith waived Mr. Robin's obligation to pay the annual rent; thereby remitting and extinguishing the debt obligation for those payments. Given that there were two permissible views of the evidence, we cannot say that the trial court was manifestly erroneous in concluding that the Sub-Lease was not terminated; therefore, it remained in effect.

Next, Mrs. Smith argues that the Sub-Lease was a nullity due to lack of consideration.[10] We disagree.

---

[10] While Mr. Robin argues that this issue was not preserved for appellate review, we disagree. Mrs. Smith's answer, trial evidence, and post-trial memorandum all raise the issue of nullity for lack of consideration.

While Mrs. Smith relies on general contract law and jurisprudence, "the leasing of state-owned water bottoms to private parties for the purpose of oyster farming is governed **exclusively** by statutory scheme." (emphasis added). *Avenal v. State*, 03-3521, p. 12 (La. 10/19/04), 886 So.2d 1085, 1095. Moreover, the statutory laws that govern oyster leases differ from the contractual provisions that govern ordinary conventional leases addressed in the Civil Code. *Id.*, 03-3521, pp. 19-20, 886 So.2d at 1099.

The State of Louisiana is the owner of all water bottoms "bordering on or connecting with the Gulf of Mexico within the territorial jurisdiction of the State." La. R.S. 56:3.[11] With limited exceptions, the State legislature allocates exclusive control of the water bottoms to the Wildlife and Fisheries Commission. *Id.* In turn, La. R.S. 41:1225[12] authorizes the Department of Wildlife and Fisheries (DWF) to grant leases on state owned water bottoms for oyster development and

_____

[11] La. R.S. 56:3(A) states:

> The ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state, and shall be under the exclusive control of the Wildlife and Fisheries Commission except as provided in R.S. 56:4.

[12] La. R.S. 41:1225:

> Notwithstanding any provisions of law to the contrary, and specifically notwithstanding the provisions of this Chapter, Title 30 of the Louisiana Revised Statutes of 1950, and Title 31 of the Louisiana Revised Statutes of 1950, the Department of Wildlife and Fisheries is authorized to grant leases on state-owned waterbottoms for oyster cultivation, bedding, and harvesting, and matters relating thereto, as provided in Subpart D of Part VII of Chapter 1 of Title 56 of the Louisiana Revised Statutes of 1950.

production. Such leases are governed exclusively by La. R.S. 56:421[13] *et seq*. *See Avenal*, 03-3521, p. 13, 886 So.2d at 1095.

"La. R.S. 56:425 provides that the Secretary of the DWF may only lease this State's water bottoms and natural reefs in the water bottoms of this State to a resident, a firm composed of residents, or a corporation domiciled in Louisiana or organized under this State's laws."[14] *Avenal*, 03-3521, pp. 13-14, 886 So.2d at 1095. The right to grant oyster leases is likewise contingent upon a determination that the State owns the water bottoms to be leased, and that the lessee agrees as a matter of contract that he will operate under Louisiana laws and pursuant to DWF's rules and regulations. *Avenal*, 03-3521, p. 14, 886 So.2d at 1095 (citing La. R.S. 56:425(A)-(B)). All leases begin on the date the lease is signed and continue for a fifteen-year period. La. R.S. 56:428(A). La. R.S. 56:425(C) recognizes that the Secretary may "make such stipulations in the leases made by him as he deems necessary and proper to develop the [oyster] industry" provided that the clauses are consistent with the statutory provisions of Subpart D. Likewise, the property rights of an oyster lessee are defined in La. R.S. 56:423 as follows:

> A. A lessee shall enjoy the exclusive use of the water bottoms leased and of all oysters and cultch grown or placed thereon, subject to the restrictions and regulations of this subpart.

---

[13] La. R.S. 56:421 establishes an oyster task force to oversee oyster development.
[14] La. R.S. 56:425 states: "The secretary may lease to any resident, any firm composed of residents, or any corporation domiciled in or organized under the laws of this state any state-owned water bottoms and natural reefs in the water bottoms of this state under the limitations stipulated or authorized in this Subpart."

B. (1) A lessee of oyster beds or grounds who has obtained, recorded and marked his lease in compliance with the law shall have the right to maintain an action for damages against any person, partnership, corporation or other entity causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee.

* * *

(3) Any action for damages under this Section shall be brought within one year of the occurrence of the wrongful or negligent act, or within one year of the date of discovery of such act, whichever last occurs.

In exchange for this exclusive use of state resources, a lessee pays the State three dollars per acre for plots up to 2,500 acres. La. R.S. 56:423(A); La. R.S. 56:428; La. R.S. 56:432.[15] La. R.S. 56:428(A) also allows the State to forego giving an oyster lessee the first right of renewal under his lease upon a determination that the lease is not capable of supporting oyster populations.

Significantly, all leases are heritable and transferable. La. R.S. 56:423;[16] La. R.S. 56:426.[17] Given that there is a specific statute that allows for the transfer of an oyster lease without any additional consideration, the Sub-Lease was authorized

---

[15] Prior to January 1, 2016, the annual rent was two dollars per acre. *See* former La. R.S. 56:428 (2010); Act 392 of 2010. In addition, prior to 2003, the lessee was limited to 1,000 acres. *See* former La. R.S. 56:432 (1981); Act 753, 925 of 1981.

[16] La. R.S. 56:423(E) states:

All leases, all applications of deceased persons for leases, and all property rights or interests acquired pursuant to such leases, made in conformity with the provisions of this Subpart are heritable and transferable. They are subject to mortgage, pledge or hypothecation, and to seizure and sale for debt, as any other property rights and credits in this state. This provision also applies to all buildings, betterments, and improvements thereon. No such inheritance or transfer is valid or of any force or effect whatsoever unless evidenced by an authentic act, judgment, or proper judicial deed registered in the office of the department in a book provided for that purpose. The department shall keep proper indexes, so that all original leases and all subsequent changes and transfers can be easily and accurately ascertained.

[17] Specifically, La. R.S. 56:426(B) states, in relevant part: "Transfers of leases from one person to another shall likewise be recorded and filed."

under the applicable law.[18] [19]  Accordingly, the trial court did not err in finding that the Sub-Lease was enforceable.

Further, in her reply brief, Mrs. Smith argues for the first time that the Sub-Lease is an absolute nullity because it was for an illegal purpose: to avoid the former 1,000-acre lease limit.  In support of her argument that this issue may be raised at any time, Mrs. Smith, again, cites to the general legal principles on contracts and absolute nullities.

However, as already discussed, oyster leases are specifically governed by statute.  In particular, La. R.S. 56:432 provides the exclusive grounds for the forfeiture of an oyster lease when a person has leased more than the authorized acreage.  It states:

> No person, partnership, or corporation shall lease more than two thousand five hundred acres of water bottoms.[20]  **Whoever leases more than the allotted amount of water bottoms forfeits, after due**

---

[18] The jurisprudence further confirms that sub-letting oyster leases is an authorized and customary practice.  *See Peltier v. Begovich*, 118 So.2d 395, 401 (1960) (husband acquired oyster leases and would sub-lease them to fisherman who would agree to pay the annual rent); *G.I. Joe, Inc. v. Chevron U.S.A., Inc., Pipeline Div.*, 561 So. 2d 62, 63 (La. 1990) (recognizing oyster leaseholder subleased the water bottoms to two different the sub-lessees); *Melerine v. Tom's Marine & Salvage, LLC*, 20-00571, p. 3 (La. 3/24/21), 315 So.3d 806, 810 (recognizing a sub-lease by OFI, Inc., one of the Plaintiff's in this case).

[19] Nevertheless, even assuming the general law applies, Mrs. Smith's argument is misplaced.  In Louisiana, consideration is not required to effect an enforceable contract.   Unlike the common law analysis of a contract using consideration, which requires something in exchange, the civil law concept of "cause" can obligate a person by his will only. *Aaron & Turner, L.L.C. v. Perret*, 07-1701 (La. App. 1 Cir. 5/4/09), 22 So.3d 910, 915, *writ denied sub nom. Aaron & Turner, LLC v. Perret*, 09-1148 (La. 10/16/09), 19 So.3d 476.  "Consideration is an objective element required to form a contract, whereas cause is a more subjective element that goes to the intentions of the parties." *Bains v. Young Men's Christian Assoc. of Greater New Orleans*, 06-1423, p. (La. App. 4 Cir. 10/30/07), 969 So.2d 646, 649.

In this case, the Sub-Lease is a standard assignment, and the cause for the contract is evident.  Mrs. Smith assigned/transferred her property rights, while also being relieved of her responsibilities under the Oyster Lease.  Under these circumstances, the requirements for the formation of a contract have been met.

[20] Prior to Act 449 of 2003, La. R.S. 56:432 contained a 1,000-acre lease limit.  *See* Act 753, 925 of 1981.  The 2003 increase in the lease limit occurred before OFI's Sub-Lease was renewed in 2009.

**trial by competent court, all leases held by him on any water bottoms of the state** (emphasis supplied).

Thus, before a lease may be forfeited on the grounds stated by Mrs. Smith, a trial on the issue by a competent court is required because all leases must be forfeited. As such, the issue may not be raised at any time.

Given that the trial court has not issued any judgment relative to a trial on this issue and it does not form part of the appeal, there are no grounds for this court to address the issue in this appeal. *Gygax v. Brugoto*, 92-0003 (La. App. 4 Cir. 11/30/94), 646 So.2d 1236 (issues raised in the reply brief on appeal that did not form a basis for an appeal, and relative to which the trial court did not issue any judgment, would not be addressed on appeal).[21]

## CONCLUSION

Given the foregoing, we do not find that the trial court abused its discretion in granting a declaratory judgment in favor of Mr. Robin finding the Sub-Lease to be effective. For these reasons, the trial court's declaratory judgment is affirmed.

**AFFIRMED**

---

[21] Even assuming the issue was properly before this Court, the record before us is insufficient to make a determination as to whether OFI exceeded its lease limits under the renewed Sub-Lease.